ARTHUR G. OSGOOD *v.* CENTRAL VERMONT RAILWAY CO.

October Term, 1904.

Present: ROWELL, C. J., TYLER, MUNSON, START, WATSON, HASELTON,
and POWERS, JJ.

Opinion filed March 9, 1905.

*Railroads—Contracts to Indemnify Against Negligence—*
*Public Policy—Penal Statutes—Construction—Illegal Con-*
*tracts—V. S. 3924.*

A penal statute is to be construed with reference to its spirit and
    reason; and courts have power to declare that a case that falls
    within its letter is not within the statute, because not within its
    spirit and reason.
V. S. 3924, penalizing the negligence of an agent of a railroad com-
    pany, whereby an injury is done to a person or corporation, does
    not extend to injuries in which the public has no interest, but
    which are wholly of private concern.
When there is a promise to do two things, one legal and the other
    illegal, the promise to do the legal act will be enforced and the
    promise to do the illegal act disregarded, irrespective of whether
    there are two distinct promises, or whether there is one promise
    that is divisible, or whether the consideration for the two prom-
    ises is entire or apportionable.

A contract is not void as against public policy unless it is injurious to the interests of the public, or contravenes some established interest of society.

The defendant railroad company leased to the plaintiff a piece of its roadway for a coal and lumber shed at an annual rental, in consideration whereof plaintiff agreed to pay the rent and to indemnify defendant from all liability for loss or damage to himself, his property or servants, occasioned by the negligence of defendant's servants. *Held*, in an action for negligently running an engine against a shed built on the premises pursuant to the lease, that the injury is purely of private concern, so that an agreement for indemnity in respect thereof is not in contravention of V. S. 3924, nor against public policy; and that said agreement, being severable from the rest of the contract of indemnity, is enforceable.

CASE FOR NEGLIGENCE. Plea, the general issue. Heard on an agreed statement of facts at the June Term, 1904, Orange County, *Rowell*, J., presiding. Judgment, *pro forma*, for the plaintiff for $300 and costs. The defendant excepted. The agreed statement set forth the lease mentioned in the opinion; alleged that the car and engine were negligently run against the plaintiff's shed by the servants of the defendant, while within the scope of their employment, that, if defendant was liable on the agreed statement, judgment should be rendered against it for $300 and costs; and that if defendant was not liable, it should have judgment to recover its costs.

*C. W. Witters* for the defendant.

The lease is not a contract against public policy. *Bates* v. *R. Co.*, 147 Mass. 255; *Baltimore etc. R. Co.* v. *Voight*, 176 U. S. 469; *Phoenix Ins. Co.* v. *Erie etc. Co.*, 117 U. S. 312; *Copeland* v. *Housatonic Ry. Co.*, 61 Conn. 531; *Barrett* v. *Carden*, 65 Vt. 431.

*M. M. Wilson* and *E. M. Harvey* for the plaintiff.

The lease is void as contravening V. S. 3924, and 3926; and as against public policy. *Coppell* v. *Hull,* 7 Wall. 558; *Tarbell* v. *R. Co.,* 73 Vt. 347; *Elkins* v. *Parkhurst,* 17 Vt. 105; *Johnson* v. *Railroad,* 86 Va. 975; *R. Co.* v. *Spangler,* 44 Ohio St. 471; *Gardner* v. *Tatum,* 81 Cal. 370; *R. R. Co.* v. *Ryan,* 15 Kan. 357; *Griswold* v. *Railroad,* 90 Iowa 265; 24 L. R. A. 647.

*Rowell,* C. J. The case is this. The defendant leased to the plaintiff for five years a piece of its roadway for a site for a coal and lumber shed, at an annual rent of fifteen dollars, payable in advance; in consideration of which the plaintiff agreed to pay said rent, and to indemnify and save harmless the defendant from all liability for loss, damage, or injury to himself, his property, servants, or agents while upon or about said premises, occasioned by fire or otherwise, resulting from the negligence of the defendant, its servants, agents, or in any other manner. The action is for negligently running an engine and a car off a spur track and against the plaintiff's shed, built upon said premises pursuant to said lease, thereby wrecking the same, and breaking and destroying divers wagons and other carriages stored therein.

The plaintiff claims that said contract is in contravention of sections 3924 and 3926 of the Vt. Statutes, and also against public policy, and therefore illegal and void.

Section 3924 provides that when an engineer, fireman, or other agent of a railroad, is guilty of negligence or carelessness whereby an injury is done to a person or corporation, he shall be imprisoned not more than a year, or fined not more than a thousand dollars; but that the section shall not exempt a person nor a corporation from an action for damages.

As the inhibition to contract implied by this section, whatever it is, cannot extend beyond its penalization, it is important to determine whether it penalizes the injury complained of. Conceding for present purposes that it penalizes all injuries in which the public has an interest, does it penalize injuries in which the public has no interest, but which are wholly of private concern? This depends upon the construction to be given to it, for its language is broad enough to include all injuries, regardless of the interests they touch.

Penal statutes are to be strictly construed, though not so strictly as to defeat their purpose. They are, like other statutes, when not too plain and specific for construction, to be construed with reference to their spirit and reason; and courts have power to declare that a case that falls within their letter is not within the statute because not within its spirit and reason and the intention of the Legislature. The Supreme Court of Pennsylvania says, quoting somebody, that "no man incurs a penalty unless his act is clearly within both the spirit and the letter of the statute imposing the penalty." *Commonwealth* v. *Wells,* 110 Pa. St. 463, 468. The Supreme Court of Maryland said much the same thing in *Clarfoss* v. *State,* 42 Md. 403. There are many forcible illustrations of the application of this rule. Puffendorf mentions a case in the Bolognian law in which it was adjudged that an enactment that "whoever drew blood in the streets should be punished with the utmost severity," did not apply to a surgeon who bled a man that fell down in the street in a fit. Blackstone says that the most universal and effectual way of discovering the true meaning of a law is, when the words are dubious, by considering the reason and spirit of it, or the cause that moved its enactment; and instances a case put by Cicero, of a law that those who, in a storm, forsook the ship, should forfeit all property therein, and that the ship and the lading should

belong entirely to those who stayed in it. In a tempest, all forsook the ship except one passenger, who was too sick to leave it. By chance the ship came into port, and the sick man kept possession and claimed the benefit of the law. But all the learned agreed that he was not within the reason of the law, which was to give encouragement to such as should venture their lives to save the ship, and that this was a merit to which the sick man could not pretend, for he stayed in the ship neither to save it nor to contribute to its safety. 1 Bl. Com. 61. The statute of 1st Edward II enacted that a prisoner who broke prison should be guilty of felony. But it was held not to extend to a prisoner who broke out when the prison was on fire, "for he is not to be hanged because he would not stay to be burned." Plowden says in his comments on *Stradling* v. *Morgan,* at p. 205a, as the result of many cases to which he refers, that "the sages of the law heretofore have construed statutes quite contrary to the letter in some appearance, and those statutes which comprehend all things in the letter, they have expounded to extend to but some things; and those which generally prohibit all people from doing such an act, they have interpreted to permit some people to do it; and those which include every person in the letter, they have adjudged to reach to some persons only,—which expositions have always been founded upon the intent of the Legislature, which they have collected sometimes by considering the cause and necessity of making the statute; sometimes by comparing one part of the act with another; and sometimes by foreign circumstances. So that they have ever been guided by the intent of the Legislature, which they have always taken according to the necessity of the matter, and according to that which is consonant to reason and good discretion." This agrees with Coke, who somewhere says that "he who knoweth not the reason of the law, knoweth not the law itself." And again

he says, that "acts of Parliament are to be so construed as no man that is innocent or free from wrong be by a literal construction punished or endamaged." In *Murray* v. *Baker,* 3 Wheat. 541, the words, "beyond seas," copied from an English statute, were construed to mean, "without the limits of the state."

In *The Church of the Holy Trinity* v. *United States,* 143 U. S. 457, it was held that the penal act of February 26, 1885, "to prohibit the importation and migration of foreigners and aliens under contract or agreement to perform labor" in this country, does not apply to a contract between an alien resident out of the United States and a religious society incorporated under the laws of a state, whereby the alien engaged to remove to this country and enter into the service of the society as its rector and pastor, and removed and entered into the service accordingly. The Court said that the society was within the letter of the statute, for not only were the general words, "labor and service," both used, but, as if to guard against any narrow interpretation, and to emphasize a breadth of meaning, to those words is added, "of any kind;" and further, that as the statute made specific exceptions, and among them, professional actors, artists, lecturers, singers, and domestic servants, it thereby strengthened the idea that every other kind of labor and service was intended to be reached; and that while there was great force in this reasoning, the Court could not think that Congress intended to denounce with penalties a transaction like the one in that case. The Court went on to say that it is a familiar rule that a thing may be within the letter of a statute and yet not be within the statute because not within its spirit nor the intention of its makers; that this is not the substitution of the will of the Court for that of the Legislature, for frequently words of general meaning are used in a statute, broad enough to in-

clude the act in question, and yet a consideration of the whole legislation, or of the circumstances surrounding its enactment, or of the absurd results that would follow from such a broad meaning, makes it unreasonable to believe that the Legislature intended to include the particular case.

It is said in *Ryegate* v. *Wardsboro,* 30 Vt. at p. 749, that the letter of the law is found by experience not to be in all cases a correct guide to the true sense of the lawgiver, wherefore rules have been adopted for the construction of statutes that look to the whole and every part of the act, to the subject-matter, the effects and consequences, the reason and spirit of the law, and thus ascertain the true meaning of the Legislature, though the meaning ascertained conflicts with the literal sense of the words. Chief Justice Marshall says in *United States* v. *Fisher,* 2 Cranch, 358, 386, that when the mind labors to discover the design of the Legislature, it seizes everything from which it can derive aid.

Applying this doctrine to the case in hand, we think that section 3924 does not extend to injuries in which the public has no interest, but which are wholly of private concern. Said section is a part of the railroad law that applies exclusively to "operating railroads," and contains many specific provisions on that subject, most of which were manifestly enacted for the safety, protection, and general benefit of the public, and apparently without reference to merely private matters in which the public has no interest, leaving those to be dealt with by the common law, the same as in other cases. Suppose, for example, that section-men should negligently and carelessly run a handcar over and injure a trifling thing of no public interest; or if section-men are not within the statute, suppose an engineer should negligently and carelessly run his engine over and injure such a thing, incapable of harming the train; would they incur the penalty? If so, it would be because the

act came within the spirit and reason of the law as well as within its letter, and because such a construction would be necessary in order to accomplish the object and purpose of the law, and to effectuate the intention of the Legislature. But this seems too much to say. Hence the language of the statute, which comprehends all injuries, must, as Plowden says, be expounded to extend to but some injuries. But where shall the line be drawn? It cannot be drawn arbitrarily, for that is not exposition. It must, then, be drawn with reference to some difference that bears a just relation to the object and purpose of the statute; and this difference is found between injuries in which the public has an interest, and injuries in which it has no interest, but which are purely of private concern; and that the injury in question is purely of private concern cannot be doubted, for it is nothing to the public whether the plaintiff or the defendant bears this loss, concerning which the defendant was not contracting in its public capacity of a common carrier, but only in its private capacity.

It follows, therefore, that if that part of the contract covering the injury here involved stood alone, the contract would not be in contravention of section 3924. But as it does not stand alone, but is part of a promise to indemnify against injuries in which, it is claimed, the public has an interest, it is contended that the whole promise must fall, as it is not divisible.

The general rule is, where you cannot sever the illegal from the legal part of a contract, that the contract is altogether void; but where you can sever them, whether the illegality be created by statute or by the common law, that you may reject the bad and retain the good. It was unanimously agreed in 14 H. 8. 25, 26, that if some of the covenants of an indenture or of the conditions indorsed upon a bond, are

against law and some good and lawful, that the covenants or conditions that are against law are void ab inito, and the others stand good.  This was adopted in Pigot's Case, 11 Coke, 26; and from it has sprung the generally accepted doctrine that where there is a promise to do two things, one legal and the other illegal, the promise to do the legal act will be enforced, and the promise to do the illegal act will be disregarded. United States v. Bradley, 10 Pet. 343, 360.   And it makes no  difference  whether  there are two  distinct  promises, or whether there is one promise that is divisible, nor whether the consideration for the two promises is entire or apportionable. Greenwood v. Bishop of London, 5 Taunt. 727, 381-82; Newman v. Newman, 4 M. & S. 66; Harriman on Cont. 134.

One of the most common instances of the application of this rule is in cases of agreements in restraint of trade, which are held to be divisible both as to time and place.   Baines v. Geary, L. R. 35 Ch. D. 154, is a case of the former kind. There, in an agreement for employment as a milk carrier, the servant undertook not to serve nor interfere with any customers served by, or belonging at any time to, the master, his successors or assigns.   Held severable, and capable of enforcement in respect of persons who were customers during the employment.   There are many cases of the latter kind.   In Price v. Green, 16 M. & W. 346, the covenant was, never to carry on a certain business in the cities of London nor Westminster, nor within six hundred miles of them.   Held, that the covenant was divisible, and good as to those cities, but bad as to the six hundred miles.   A covenant not to engage in the manufacture of ocher "in the county of Lehigh or elsewhere," is divisible, and good as to the county.   Smith's Appeal, 113 Pa. St. 579.   A contract not to engage in a particular trade or business for a specified time "in the city of St. Louis nor at any other place," is divisible.   Peltz v. Eichele, 62 Mo. 171.

So a covenant not to enter into a certain business in a certain county, nor, for a time, into the same business in the United States, is good as to the first, though bad as to the last.  *Dean v. Emerson,* 102 Mass. 480.

It is to be noticed that the consideration for the plaintiff's promise in the case at bar is wholly legal, and has been practically executed by allowing the erection and use of the structure.

Under the rule above stated, that part of the plaintiff's promise of indemnity here involved is severable from the rest of the promise and enforceable, not being in contravention of the statute, unless it is against public policy, which the plaintiff claims, but which we do not think.  It is said in *Griswold* v. *Illinois Central R. R. Co.* 90 Iowa, 265, that "public policy is variable; that the very reverse of that which is the policy of the public at one time, may become public policy at another time, and hence no fixed rule can be given by which to determine what is public policy; that the authorities all agree that a contract is not void as against public policy unless it is injurious to the interests of the public or contravenes some established interest of society."  It is said by Mr. Justice Gray in *Hartford Ins. Co.* v. *Chicago etc. Railway Co.,* 175 U. S., at p. 106, that this is in exact accord with the opinion in *Pope Manufacturing Co.* v. *Gormully,* 144 U. S., at p. 223.  Sir George Jessel, Master of the Rolls, says in *Printing Co.* v. *Sampson,* L. R. 19 Eq., at p. 465, that "it must not be forgotten that you are not to extend arbitrarily those rules that say that a given contract is void as being against public policy, because if there is one thing more than another that public policy requires, it is that men of full age and competent understanding shall have the utmost liberty of contracting, and that their contracts, when entered into freely and voluntarily, shall be held sacred, and be enforced by courts of jus-

tice; wherefore you have this paramount public policy to consider, that you are not lightly to interfere with this freedom of contract."

This language is quoted and approved in *Baltimore & Ohio etc. R. R. Co.* v. *Voigt,* 176 U. S., at p. 505, where it is further said that "the right of private contract is no small part of the liberty of the citizen, and the usual and most important function of courts of justice is, to maintain and enforce contracts, rather than to enable parties thereto to escape from their obligation on the pretext of public policy."

A railroad corporation holds its station grounds, railroad tracks, and right of way, for the public use for which it is incorporated, yet as its private property, and to be occupied by itself or by others in the manner that it may consider best fitted to promote, or not to interfere with, the public use. It may, in its discretion, permit them to be occupied by others with structures convenient for receiving and delivering freight upon its road, so long as a free and safe passage is left for the carriage of freight and passengers. *Grand Trunk Railway Co.* v. *Richardson,* 91 U. S. 454. And it must provide reasonable means and facilities for receiving goods offered by the public to be transported over its road. *Covington Stockyards* v. *Keith,* 139 U. S. 128. But it is not obliged, and cannot be compelled even by statute, against its will, to permit private persons to erect and maintain structures for their own benefit upon the land of the company. *Missouri Pacific Railway Co.* v. *Nebraska,* 164 U. S. 403.

In the case at bar the plaintiff had no right to build his shed upon the land of the defendant without its permission, and it was under no obligation to the public nor to the plaintiff to permit him to do it. In granting and receiving the permission to do it, and in erecting it, both parties knew that its proximity to the spur track, the building of which was con-

templated, would increase the risk of damage by cars running
off that track accidentally or by negligence.   The principal
consideration expressed in the lease for the license granted, is
the stipulation for exempting the defendant from liability to
the plaintiff for damage thus occasioned, and the public had
no interest in that matter.   In *Griswold* v. *Illinois Central
Railway Co.* 90 Iowa, 265, it was held that a stipulation in a
contract in which a railroad company permitted a building to
be erected on its right of way wherein to do business with the
public, that the company should not be liable for damage by
fire negligently communicated by it to the building, did not
contravene public policy, because the public had no interest as
to who should carry the hazard incident to the building's being
located as it was.

  *Stephens* v. *Southern Pacific R. R. Co.* 109 Cal. 86, is to
the same effect.   There the defendant leased to the plaintiff
land adjoining its depot grounds on which the plaintiff had
built a warehouse.   He covenanted in the lease that the com-
pany should not be liable to him for damage caused by fire
from its engines or otherwise.   Held, that he could not recover
for the destruction of the warehouse by fire spreading from
the company's adjoining land, negligently kindled thereon by
its servants for the purpose of burning dry grass and rubbish,
and that the covenant did not contravene public policy, nor, as
the Court said, did it increase the risk and danger to the public
by tending to promote negligence.   This may with equal truth
be said of the case at bar.   It is not like the Tarbell case, 73
Vt. 347, 51 Atl. 6, for there the negligence stipulated against
touched the interest of the public, as the public has an inter-
est in the personal safety of railroad operatives while at work.

  In the very recent case of *Mann* v. *Pere Marquette R. R.
Co.,* decided by the Supreme Court of Michigan, and found in
97 N. W. Reports, 721, the plaintiffs were lumbermen, and

owned a large mill. Desiring to have side tracks laid thereto for shipping in and out products, they applied to the defendant to put them it, and thereupon a contract was entered into, whereby the company agreed to build the tracks, and the plaintiffs, recognizing that the use of them involved risk of loss by fire from engines, assumed as a further inducement and consideration for their construction, all such risk of fire, and released the company from all liability, statutory or otherwise, for loss or injury to them by fire, whether due to the negligence of the company or its employees or otherwise. The Court said that the case did not fall within those where contracts to exempt from liability are held void on the ground of public policy; that it is a fundamental rule that what one may refuse to do entirely, he may agree to do upon such terms as he pleases; that the defendant was not acting as a public carrier, and was not bound to put in the tracks; that there was no occasion to contract against properly equipped and properly managed engines, for fire caused by such would not impose liability; and that the only purpose of such a contract was, to avoid the consequences of the defendant's own negligence, which it had a perfect right to contract against, both in reason and on authority.

These cases are not so strong as the one at bar, for the fires there stipulated against might have spread and endangered the public, while the cause of the injury here involved necessarily spent itself with the injury.

As the promise is divisible, we have no occasion to consider whether the rest of it is against public policy or in contravention of either of said sections, the last of which provides that those owning or operating a railroad shall be responsible in damages for injuries by fire communicated by engines, unless due caution and diligence are used, and suitable expedients employed, to prevent such damage.

We hold, therefore, that that portion of the contract applicable to the injury in question, is not against public policy nor in contravention of said sections, but is good and enforceable against the plaintiff.

*Judgment reversed, and judgment for the defendant to recover its costs.*