## Clorith V. Colgan v. Agway, Inc. v. J.P. Carrara Concrete Co.

[553 A.2d 143]

No. 85-283

Present: **Hill, Peck, Gibson and Hayes,**[1] **JJ., and Barney, C.J. (Ret.),**
Specially Assigned

Opinion Filed September 9, 1988

*A. Gregory Rainville* of *Tyler, Bruce and Brooks*, St. Albans, for Plaintiff-Appellee.

*John Paul Faignant* and *William Cohen* of *Miller, Norton & Cleary*, Rutland, for Defendant-Appellant.

**Hill, J.** Defendant-appellant Agway, Inc., appeals from a jury verdict in favor of plaintiff-appellee Colgan. We affirm.

After attending a local seminar given by Agway concerning the benefits of modern animal waste disposal systems, Colgan, a dairy farmer, entered into a standard contract with Agway for the construction of a manure storage facility. Under the agreement, plaintiff was responsible for preparing the construction site and providing a dirt berm around the exterior walls of the structure once it was completed. The defendant supplied the plans and agreed to construct the facility. Three years after the facility was completed, one wall of the structure collapsed.

The plaintiff brought suit against the defendant claiming that defendant breached its contract by failing to construct the facility in accordance with the contract specifications. The plaintiff also claimed that defendant failed to design the facility properly. It was further claimed that defendant was careless and negligent in the construction design, distribution, and sale of the facility.

The defendant answered and moved for summary judgment, relying on paragraph nine of the contract which, it claims, generally

---

[1] Justice Hayes was present for oral argument, but did not participate in the decision.

released it from any liability, except for that arising from defects in work or materials which appear within one year of completion of the contract. Paragraph nine of the contract provides, in relevant part:

> ONE YEAR LIMITED WARRANTY — Contractor warrants all work and materials furnished under this contract to be free from defects in materials and faulty workmanship under normal use which appear within one (1) year . . . Contractor's obligation under this warranty is limited to replacing or repairing at its option without charge any work or materials which examination shall disclose to Contractor's reasonable satisfaction to be defective. THIS WARRANTY IS EXPRESSLY IN LIEU OF ANY OTHER WARRANTY, EXPRESSED OR IMPLIED, INCLUDING ANY IMPLIED WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE AND OF ANY OTHER OBLIGATIONS OR LIABILITY ON THE PART OF THE CONTRACTOR.

Defendant argued in its motion for summary judgment that the agreement barred any remedy for plaintiff's loss as the collapse of the facility occurred more than a year after construction, and because the agreement acted as a general release. The court denied the motion. The defendant brings this appeal after the jury verdict and the denial of its motion for judgment notwithstanding the verdict or a new trial.

The only issue before this Court is whether the trial court erred in not granting defendant's motion for summary judgment and in not directing a verdict in its favor based upon the agreement between the parties. It is defendant's position that the above language releases it from any and all responsibility for the design and construction of the building other than the obligation to replace or repair any work and materials which appear defective within one year of completed construction. Defendant asserts that the provision in question is clear and unambiguous such that the plain meaning of the words must apply and no interpretation of the language is necessary.

It has long been the law of this jurisdiction that contractual provisions limiting the tort liability of parties to a contract are not per se unconscionable. See *Lamoille Grain Co. v. St. Johnsbury & Lamoille County R.R.*, 135 Vt. 5, 7, 369 A.2d 1389, 1390 (1976); *Osgood v. Central Vermont Ry.*, 77 Vt. 334, 347, 60 A. 137, 141 (1905). Moreover, this Court has consistently stated that

when interpreting this type of contractual provision, the applicable rule of construction is the same as that for other questions of contract construction: "Where the language of the agreement is clear, the intention and understanding of the parties must be taken to be that which their agreement declares." *Lamoille Grain*, 135 Vt. at 8, 369 A.2d at 1390 (citing *Stevens* v. *Cross Abbott Co.*, 129 Vt. 538, 283 A.2d 249 (1971)).

Application of this rule of construction to particular contract language, however, does not yield an obvious result. The rule of construction can only be applied coherently if the applier recognizes that the meaning of particular contract language, like any other language, is not always absolutely clear. Clarity of language, like ambiguity, is a relative and not an absolute concept. See 4 Williston on Contracts § 609, at 402-04 (3d ed. 1961). It is the degree of clarity that language must convey in order to achieve a particular legal result which is the crucial question.

The courts have traditionally disfavored contractual exclusions of negligence liability, and, because of this orientation, have applied more exacting judicial scrutiny when interpreting this type of contractual provision. See *Doyle* v. *Bowdoin College*, 403 A.2d 1206, 1208 (Me. 1979); *Gross* v. *Sweet*, 49 N.Y.2d 102, 106, 400 N.E.2d 306, 308, 424 N.Y.S.2d 365, 367 (1979), *Dilks* v. *Flohr Chevrolet, Inc.*, 411 Pa. 425, 434, 192 A.2d 682, 687-88 (1963); 4 Williston on Contracts § 602A, at 325-26. In other words, a *greater degree* of clarity is necessary to make the exculpatory clause effective than would be required for other types of contract provisions. Heightened judicial scrutiny of contractual disclaimers of negligence liability take the form in Vermont of the rule that such disclaimers are exculpatory, they must be construed strictly against the parties relying on them. *Douglass* v. *Skiing Standards, Inc.*, 142 Vt. 634, 637, 459 A.2d 97, 98 (1983).

What this rule of strict construction does is impose the requirement that contractual language disclaiming tort liability be clear enough that the intent of both parties to relieve the defendant of the claimed liability be unmistakable. As stated by one leading commentator:

> If an express agreement exempting the defendant from liability for his negligence is to be sustained, it must appear that its terms were brought home to the plaintiff. . . . It is also necessary that the expressed terms of the agreement be

> applicable to the particular misconduct of the defendant
> . . . .

W. Prosser & W. Keeton, The Law of Torts § 68, at 483-84 (5th ed. 1984). The test we adopt today is consistent with the rule of strict construction we have previously recognized: "In order for the agreement to assume the risk to be effective, it must . . . appear that its terms were intended by both parties to apply to the particular conduct of the defendant which has caused the harm." Restatement (Second) of Torts § 496 B comment d (1965).

Defendant argues that the trial court found that the relevant contract language was clear, and that under *Lamoille Grain, supra,* the court was bound to apply the plain language of the contract immunizing it from tort liability. In *Lamoille Grain,* the trial court had expressly found that the contract language unambiguously immunized defendant from plaintiff's claim, and this Court enforced the contract on that basis. *Lamoille Grain,* 135 Vt. at 8, 369 A.2d at 1390. What defendant's argument fails to acknowledge, however, is that unlike the trial court in *Lamoille Grain,* the trial court here did not find that the relevant exculpatory language clearly released defendant from *all* tort liability. Rather, the court merely found that the language was a clear disclaimer of warranty liability with respect to workmanship and materials, and, on that basis, granted defendant's motion for directed verdict on the plaintiff's warranty claim. In addition, and most importantly, the court found that, with respect to liability in tort for negligent design of the structure, the contract language was not clear and not specific enough to excuse defendant from such liability. We agree.

The most effective way for parties to express an intention to release one party from liability flowing from that party's own negligence is to provide explicitly that claims based in negligence are included in the release. Thus, although a specific reference to negligence liability is not essential to effectively immunize a party from such liability, *Douglass,* 142 Vt. at 636, 459 A.2d at 98; *Lamoille Grain,* 135 Vt. at 8, 369 A.2d at 1390, in order for the agreement to have such an effect, "words conveying a similar import must appear." *Gross* v. *Sweet,* 49 N.Y.2d at 108, 400 N.E.2d at 310, 424 N.Y.S.2d at 368; see also *Lincoln Pulp & Paper Co.* v. *Dravo Corp.,* 436 F. Supp. 262, 273 & n.10 (D. Me. 1977) (A specific reference to negligence or a cognate, or the absence of such a

reference, is a significant factor in determining whether a limitation clause excludes liability for damages arising from negligence.).

The exculpatory contract language relied on by defendant is contained in a limitation of liability provision of the contract. The title of this paragraph is "One Year Limited Warranty." The first two sentences of the paragraph, which create the warranty and delineate its scope, refer exclusively to liability for workmanship and materials. Nowhere in these two sentences, nor in the third sentence, which contains the exculpatory language, is there any specific reference to negligence, tort liability, or any cognate of either of those legal concepts.

Moreover, the purported release is located at the very end of a warranty clause of a performance contract which sets forth with particularity the parties' respective performance obligations in separate paragraphs. Given the manner in which the remainder of the contract is drafted, it defies both logic and common sense that the parties would intend to release the seller from all liability arising out of defective design of the structure by tacking broad exculpatory language to the end of a limited warranty clause. We conclude that the trial court was correct in ruling that the contract language was not an effective release of defendant's liability for negligent design of the facility.

Nothing in *Douglass, supra,* mandates or suggests a contrary result. The contract involved in that case was an agreement, signed by the plaintiff as a condition of his entry into an inherently dangerous skiing competition, which was specifically drafted and intended to be a general release of the defendant ski area for any injuries suffered by plaintiff "as a result of his participation in the competition." *Douglass,* 142 Vt. at 637, 459 A.2d at 98. While the contract did not include the word negligence, it did contain language which, in the context of the transaction involved, manifested unmistakably the parties' intent to release the defendant from the claimed liability.[2] That is not the case here.

---

[2] The release in *Douglass* stated that plaintiff agreed "to release, hold harmless and forever discharge [defendants] from any and all claims, demands, liability, right or causes of action of whatsoever kind of [sic] nature which [plaintiff] may have, arising from or in any way connected with, any injuries, losses, damages, suffering . . . which" he might sustain as a result of his participation in the competition. *Douglass,* 142 Vt. at 637, 459 A.2d at 98.

While not directly applicable here because this case does not involve a contract for the sale of "goods" as defined in 9A V.S.A. § 2-105(1), we note that the principle of unconscionability embodied in 9A V.S.A. § 2-302(1) lends persuasive support to our holding. As stated in Comment No. 1 to § 2-302, "[t]he principle [of unconscionability] is one of the prevention of oppression and unfair surprise . . . ." 9A V.S.A. § 2-302, Uniform Laws Comments No. 1. Apart from the question of the relative bargaining power of the parties, we think that there is no question but that, in the commercial setting of this transaction, and in light of the relevant contract language discussed above, the plaintiff would have been unfairly surprised were he to be informed that, by virtue of the contract, the defendant was protected from any liability flowing from negligent design of the facility.

*Affirmed.*

**Peck, J.**, dissenting. I disagree with the result reached by the majority in this case. I believe it is based primarily on "the understandable promptings of sympathy," *Simpson* v. *State Mutual Life Assurance Co.*, 135 Vt. 554, 560, 382 A.2d 198, 201 (1977) (Larrow, J., dissenting), which, however appealing from a purely subjective and emotional point of view is, nevertheless, bad motivation for judicial decisions, leading inevitably to bad law.

In his dissent in *Simpson*, a case, like this one, dealing with the construction of a contract, Justice Larrow commented, in substance, that he never realized a certain phrase in the disputed contract was "unclear or ambiguous" until the majority wrote to say that it was. *Id.* at 559, 382 A.2d at 201. He continued: "I would give the phrase its 'plain, ordinary and popular sense.' " *Id.* He then went on, as quoted in the first paragraph above, to suggest that the majority had allowed itself to succumb to the promptings of sympathy.

Apart from the motive of sympathy generated by the application of the plain meaning rule to the contract between the parties, there is nothing which justifies the lower court's denial of summary judgment, or the affirmance of that denial here. The majority has simply resorted to the same ill-advised tactic employed in *Simpson*: a contract provision which is carefully written, unambiguous, and clear to anyone, including a layman, who bothers to

read it, suddenly becomes ambiguous and obscure by the simple expedient of saying it is.

It may be that the law should be changed to prohibit as unconscionable the limited warranty employed in the case before us, both as to subject matter and time, for construction-type projects of the proportions involved here. Moreover, as is common enough in small scale construction work, the builder customarily has, or certainly should have, a high degree of knowledge and expertise, whereas the person for whom the work is to be accomplished may have little or none, and must rely entirely on the skills of his contractor or builder.

However desirable this may be, any such remedy lies with the legislature, not the courts. The issue in this case, under the law of contracts as it now exists, turns entirely on the ambiguity or lack thereof of paragraph nine of the contract. I am baffled how anyone, let alone the majority of a supposedly neutral and experienced court, can, without blushing, hold that paragraph nine of the subject contract is in any manner unclear, or justifies any such statement as: "the plaintiff would have been unfairly surprised were he to be informed that, by virtue of the contract, the defendant was protected from any liability flowing from negligent design of the facility." The only basis for the slightest surprise would be the possibility that plaintiff did not read the contract, or did not read it with any care, as, unfortunately, happens only too frequently. I suspect that may well be the case here.

But the carelessness of one party, including his failure to read the terms of his contract carefully and asking questions if necessary, is an inexcusable and injudicious basis upon which to deny the other his full rights when they are as clearly and carefully spelled out as they are here. The disputed clause in the contract between plaintiff and defendant constitutes at least a part of the conditions under which the latter was willing to execute the agreement at all. For all that appears, the limitation of liability provision may have been inserted for very legitimate reasons such as, for example, the cost of liability insurance.

Gone are the days, apparently, when prospective parties to a contract, and the attorneys who advise them, can look to the courts and precedential decisions, with the slightest degree of confidence and trust, for guidance in the preparation of binding agreements. One wonders, understandably in the light of today's result, what has happened to those long-standing principles of

contract law, holding, inter alia, that this Court will enforce a contract according to its terms, that the Court will not make a new or different contract for the parties, but must presume that they intended to make the contract signed by both, and to be bound by its terms. *Roy's Orthopedic, Inc.* v. *Lavigne*, 145 Vt. 324, 326-27, 487 A.2d 173, 175 (1985). "[T]his Court on appeal, must take the applicable law as we find it, however harsh the result." *Id.* at 325-26, 487 A.2d at 175.

The majority has repudiated these standards, or at least wriggles its way around them in result-oriented decisions such as the matter before us and in the earlier *Simpson* case, by the simple expedient of saying that the terms of the contract in question are ambiguous when, very clearly, they are not. I consider this devise to be egregiously injudicious and cynical, particularly on the part of an appellate court.

Similarly, the majority attempts to distinguish *Douglass* v. *Skiing Standards, Inc.*, 142 Vt. 634, 459 A.2d 97 (1983). But when the deluge of legal patter is reduced to its colloquial bottom line, all the opinion really says is that the agreement in *Douglass*, which was a long one, employing terms of legal significance to no greater or less an extent than the one before us today, was not ambiguous or unclear, whereas the contrary is the case here. It is admittedly futile and repetitious to point out that the subject agreement is "ambiguous" only because the majority says it is, whereas to anyone who examines the contract here fairly, as a dispassionate neutral, it is not. In my view this is an arbitrary and serious abuse of judicial power.

In the realm of civil law, insurance companies, banks, and "big" business are favorite whipping-boys of too many courts. In this case, it is business that feels the sting of the majority's "cat." *Simpson* was a curtain raiser. From today, business is at greater risk in Vermont than it ever had reason to believe possible. It matters not how carefully or clearly contracts are prepared; the test now, which is controlled entirely by individual whim, is a sufficient hardship to evoke the purely subjective and unpredictable sympathy of the malleable majority of this Court. It is not a bright day for the judicial neutrality with which courts are expected to resolve disputes between contending parties.

We recognized in *Douglass*, 142 Vt. at 637, 459 A.2d at 98, that exculpatory contracts are construed strictly against the party relying on them, but they are not illegal, per se. In that case we

affirmed the trial court's summary judgment in favor of the defendant based on the waiver of liability provisions of the contract which we held were clear, and, while they were long, were not "subject to being questioned as deceptive or misleading to the average layman." *Id.* at 636, 459 A.2d at 98. The contract before us today is no less so, notwithstanding the unconscionable ruling to the contrary by the majority. It follows that we should take the law as we find it, regardless of the results.

The contract here is neither deceptive nor misleading to any "average layman" who bothers to read it. The limitation of liability was a part of the consideration for which defendant bargained; very likely it entered into its computation of the amount to be charged the plaintiff. Whatever the reason, the limitation was not illegal; it was clearly set forth. There is no showing that plaintiff was denied ample time to read the provisions, nor is there any claim of fraud, misleading, or bad faith. The contract does not contain any obscure legalisms; there is no infamous "small print" or words that are not well within the scope of common knowledge and usage. The majority have arbitrarily "rewritten" the contract to deprive the defendant of the full consideration for which it bargained in good faith, and subjected it to a liability it could not have foreseen. It entered into a contract containing provisions that were entirely proper at the time, and were clearly expressed; the majority changed the law to make illegal, retroactively, that which was legal on the date it was consummated. This is similar to the enormity perpetrated by the majority in *Payne* v. *Rozendaal*, 147 Vt. 488, 520 A.2d 586 (1986), a decision from which I also dissented.

Paragraph nine is plainly divisible into four parts. The first part sets forth *exactly* what *is* warranted, and beyond any possible misunderstanding establishes a time limit on the warranty. The second part clearly defines the limits of defendant's obligations under the warranty. Part three is a clear *disclaimer* of any and all other *warranties* whatsoever, except for the warranties and the obligations of defendant relating thereto for which *express* provision is made. This disclaimer is all embracing as to the warranties; anything more on that subject would be redundant and, in all probability, serve only to confuse the issue and perhaps render the contract truly ambiguous.

Having completely and clearly exhausted the matter of warranties in the first three parts of paragraph nine (what else could

possibly have been written on the subject that would not have been redundant?), the fourth part concludes the paragraph with a catchall disclaimer of any *other* (other than what? other than the express warranty, of course) obligations or liabilities. The words "other liabilities" (that is, other than under the warranty) mean what they say, thereby excluding liabilities based on tort, contract, or otherwise. To hold it does not, or that it is ambiguous, is to despair of the ability of the average laymen in this country to read plain English, as well as the possibility of drafting a binding contract that can hope to stand against the whim of a court prepared to find an ambiguity in every certitude, and rewrite contracts after the fact in any way it wishes, provided the consequences of the contract as written and agreed to by both parties evokes sympathy for one of the parties.

Properly read, and I do mean as only a lawyer is qualified to do, the matter in paragraph nine, set forth in the contract in *upper-case type*, provides:

> This warranty is *expressly* in lieu of any other warranty . . . *and of any other* obligations or liability . . . . (Emphasis added).

Clearly the second "other" is exclusive of, and has no possible relationship to, warranties. The disclaimer is clear, and though admittedly broad, plaintiff agreed to it.

The majority has virtually eliminated any certitude that could previously be found in long-standing precedential decisions in the field of contract law. In the place of desirable stability, commencing at least with the earlier majority opinion in *Simpson,* and more recently in *Payne v. Rozendaal,* the majority is making a lottery of the Court, a gambling hall, wherein the key to the prize is the possibility of a subjective emotional response on the part of the Court, motivated entirely by the prompting of sympathy. The finding of ambiguity is result oriented; there is nothing ambiguous about paragraph nine, and it should be enforced according to its plain meaning. I would reverse and enter judgment for the defendant.