**Nancy SZCZOTKA**

v.

**SNOWRIDGE, INC., and Sugar Ridge, Inc., d/b/a Sugarbush Resort Corporation.**

**Civ. A. No. 5:93–370.**

United States District Court, D. Vermont.

Nov. 29, 1994.

Christopher P. Sullivan, Keyser, Crowley, Meub, Layden, Kulig & Sullivan, P.C., Rutland VT, for plaintiff.

David L. Cleary, David L. Cleary Associates, P.C., Rutland VT, Sarah A. Jarosak, Chesney, Murphy & Moran, Westbury, NY, for defendants.

## ORDER

BILLINGS, Senior District Judge.

On September 22, 1994, Defendant Snowridge, Inc. d/b/a Sugarbush Resort Corporation ("Sugarbush") moved for summary judgment in this matter. Plaintiff Nancy Szczotka ("Szczotka") has filed opposition.

### Background

Sugarbush is a Vermont corporation that operates a ski facility in Warren, Vermont. On February 12, 1992, Szczotka, an inexperienced skier, visited the Sugarbush ski facility. Szczotka rented skis and boots from the Sugarbush Rental Shop, which made necessary adjustments to the ski bindings based on height and weight information provided by Szczotka. While skiing in the late morning of February 13, 1992, Szczotka fell. Her bindings did not release and she sustained injuries to her knee. In her two count Complaint, Szczotka alleges that her injuries were due (1) to the negligence of Sugarbush's employees in fastening and adjusting her ski boots; and (2) to the dangerous and defective conditions of Defendant's premises.

At the time she rented the ski equipment, Szczotka signed a "release agreement" which provided, inter alia:

PLEASE READ CAREFULLY BEFORE SIGNING.

\* \* \* \* \* \*

6. I understand that the ski-boot-binding system which I have rented will not release at all times nor under all circumstances, nor is it possible to predict every situation in which it will release, and it is therefore no guarantee of my safety.

7. I accept and clearly understand there are inherent and other risks involved in the sport of skiing, that injuries are a common and ordinary occurrence of this sport, and I freely assume all those risks and any injury.

\* \* \* \* \* \*

12. In consideration of the equipment being rented to me or at my request, and in further consideration of all the above, including risk acceptance, I hereby release Sugar Ridge, Inc., Snowridge, Inc., d/b/a Sugarbush Resort Corporation and its owners, agents and employees from any and all liability for damage and injury to myself or to any person or property resulting from any risks or negligence, or the installation, maintenance, selection, adjustment and use of this equipment, accepting myself full and complete responsibility for any and all such damage, injury of any kind, or death which may result.

I, THE UNDERSIGNED, HAVE READ AND UNDERSTOOD THE TERMS OF THIS RENTAL AND RELEASE AGREEMENT *ABOVE*.

SKIER'S SIGNATURE [signed] Nancy Szczotka.

In her deposition, Szczotka admitted that she signed the release agreement and that she understood the meaning of the above paragraphs. (Szczotka Dep. at 56–60). Szczotka further observed that her fall was just a part of the sport of skiing and had not been caused by any defect in the trail. (Szczotka Dep. at 74–76). Similarly, Szczotka's com-

panion, John Cardona ("Cardona"), with whom Plaintiff had been skiing at the time of her fall, noted that there was nothing unusual about the snow or skiing conditions on the trail at the time Szczotka fell. (Cardona Dep. at 9.)

### Discussion

■■■ Summary judgment is appropriate when the Court finds that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). The initial burden of demonstrating that no genuine issue of material fact exists rests on the party seeking summary judgment. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). The burden then shifts to the opposing party, who may not rest on its pleading but must present "significant probative evidence" demonstrating that a factual dispute exists. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986). The Court must view these materials and draw all inferences in the light most favorable to the non-movant. *Id.* at 255, 106 S.Ct. at 2513–14.

### I. Count I

The material facts surrounding Szczotka's execution and comprehension of the release agreement as well as her subsequent fall are not in dispute. Consequently, the Court turns to the legal question of whether the agreement signed by Plaintiff is valid as a release of Defendant's potential liability. Because this matter comes before the Court pursuant to its diversity jurisdiction, this question must be decided according to Vermont law.

■■■ In Vermont, an exculpatory agreement is traditionally disfavored. *Colgan v.*

*Agway, Inc.,* 150 Vt. 373, 375, 553 A.2d 143 (1988). Accordingly, the language of the agreement is construed strictly against its drafter. *Douglass v. Skiing Standards, Inc.,* 142 Vt. 634, 636, 459 A.2d 97 (1983). Nevertheless, where the language of the contract is clear, the parties are bound by the common meaning of their words and the Court need not engage in fanciful alternative constructions. *Id.* at 636, 459 A.2d 97 (agreement signed by entrant in professional ski competition released defendants of liability for any injuries or damages caused by their own negligence, despite absence of word "negligence" in contract). As a matter of law, the Court therefore finds that the language of the contract clearly and unambiguously demonstrates an intent to absolve Defendant of liability for Plaintiff's injuries. *See Colgan,* 150 Vt. at 376, 553 A.2d 143 (" '[i]n order for the agreement to assume the risk to be effective, it must ... appear that its terms were intended by both parties to apply to the particular conduct of the defendant which has caused the harm.' ") (quoting Restatement (Second) of Torts § 496 B comment d (1965)).

■■■ In her opposition, however, Szczotka urges that the Court rely on public policy to determine that the release is ineffective. A clause in an agreement exempting a party from tort liability violates public policy where the clause exempts a party charged with a duty of public service from tort liability. *Kyriazis v. University of W. Va.,* —— W.Va. ——, ——, 450 S.E.2d 649, 653 (W.Va.1994) (citing Restatement (Second) of Contracts § 195(2)(b)).[1]

Although the Vermont Supreme Court has not yet spoken on the issue of whether a ski resort constitutes a public service, the United States District Court for the District of Vermont has previously addressed this issue. In

---

1. The following characteristics are often examined in determining whether an organization constitutes a public service:

   (1) it concerns a business of a type generally thought suitable for public regulation;

   (2) the party seeking exculpation is engaged in performing a service of great importance to the public and which is often a matter of practical necessity for some members of the public;

(3) such party holds itself out as willing to perform this service for any member of the public who seeks it, or at least for any member coming within certain established standards;

(4) because of the essential nature of the service, and the economic setting of the transaction, the party invoking exculpation possesses a decisive advantage of bargaining strength against any member of the public who seeks such service;

a case with markedly similar facts to those involved in the case at bar, the federal district court concluded that "no special condition precedent such as public interest or essential service or a special legal relationship" existed to invalidate an exculpatory agreement signed by an individual renting ski equipment at a Vermont ski area. *See Barenthein v. Killington, Ltd.*, No. 86–CV–33 (D.Vt.1987) (Coffrin, C.J.). This view is consistent with the conclusion of other jurisdictions on this issue. *See Blide v. Rainier Mountaineering, Inc.*, 30 Wash.App. 571, 636 P.2d 492, 493 (1981) (mountaineering does not involve a public interest); *Broderson v. Rainier Nat'l Park*, 187 Wash. 399, 60 P.2d 234, 237 (1936) (operation of toboggan course does not constitute public service); *Milligan v. Big Valley Corp.*, 754 P.2d 1063, 1067 (Wyo.1988) (ski area did not constitute a service "demanding a special duty to the public, nor are its services of a special, highly necessary or essential nature").

■ The Court therefore finds that Plaintiff should be bound by the agreement she executed. The terms of the agreement were clear and unambiguous. Moreover, a ski resort is not the type of public service that would justify application of public policy to relieve Plaintiff of the terms of the agreement. Accordingly, Defendant's Motion for Summary Judgment with respect to Count I is hereby GRANTED.

## II. Count II

■ Defendant further argues that the Court should grant summary judgment with respect to Count II of Plaintiff's Complaint, which asserts that Plaintiff's fall was the result of dangerous, defective and hazardous conditions on the ski slope caused by Defendant's negligence. In Plaintiff's deposition, however, she observed that the reason for her fall had nothing to do with anything other than the sport of skiing. Similarly, Plaintiff's companion, Cardona, also observed that the skiing conditions were "fine" at the time Plaintiff fell.

Because Plaintiff has failed to adduce any evidence to support her contention in Count II of her Complaint, the Court concludes that there is no genuine issue of material fact with respect to Defendant's negligence in maintaining the ski trails. Accordingly, the Court hereby GRANTS Defendant's Motion with respect to Count II of the Complaint.

### Conclusion

In light of the foregoing, the Court hereby GRANTS Defendant's Motion with respect to Counts I and II. Judgment is hereby rendered in favor of the Defendants.

SO ORDERED.

---

(5) in exercising a superior bargaining power, the party confronts the public with a standardized adhesion contract of exculpation, and makes no provision whereby a purchaser may pay additional reasonable fees to obtain protection against negligence;

(6) the person or property of members of the public seeking such services must be placed under the control of the furnisher of the services, subject to the risk of carelessness on the part of such furnisher or its servants.

*See Tunkl v. Regents of Univ. of Cal.*, 60 Cal.2d 92, 32 Cal.Rptr. 33, 36–38, 383 P.2d 441, 444–46 (1963).