# Robert E. Hamelin v. Simpson Paper (Vermont) Co. &

# Simpson Paper Co. v. Vescom Corp. & National Union Fire Insurance Co.

[702 A.2d 86]

No. 96-028

Present: Allen, C.J., Gibson, Dooley, Morse and Johnson, JJ.

Opinion Filed August 1, 1997

*Barney L. Brannen* of *Plante, Hanley & Gerety, P.C.*, White River Junction, for Third-Party Plaintiff-Appellant Simpson Paper Co.

*Kaveh S. Shahi* of *David L. Cleary Associates, P.C.*, Rutland, for Third-Party Defendants-Appellees.

**Johnson, J.** Simpson Paper Company (Simpson) appeals an order of the Essex Superior Court granting summary judgment in favor of Vescom Corp. (Vescom) and National Union Fire Insurance Co. (National Union). Simpson contends the court erred in ruling that Vescom is not required to indemnify Simpson for damages paid to an injured Vescom security guard and that National Union is not required to indemnify or defend Simpson under Vescom's insurance policy. We conclude that the contract between Vescom and Simpson requires Vescom to indemnify Simpson under these circumstances and, accordingly, reverse.

The events leading to the suit were stipulated to by the parties. In January 1992, Vescom and Simpson entered a contract in which Vescom agreed to provide security services at Simpson's plant in Gilman, Vermont. In July 1992, Robert Hamelin, a Vescom security guard, was injured at the Simpson facility. As Hamelin was making his rounds, he stepped on a wooden stair that gave way. He received workers' compensation benefits through Vescom, and then filed suit in Essex Superior Court against Simpson. Hamelin claimed his injuries were caused by Simpson's negligent failure to inspect, maintain, and repair the stairway.

Simpson, in turn, brought a third-party action against Vescom and National Union. It claimed that Vescom was required to indemnify Simpson under the contract, even if the damages were the result of Simpson's own negligence. Simpson also alleged that National Union was obligated to defend and indemnify Simpson, because Vescom's insurance policy with National Union named Simpson as an additional insured.

The parties settled Hamelin's claim by stipulation, leaving the claims between Simpson, Vescom, and National Union to be resolved by the court. In return for a general release, Hamelin and the workers' compensation carrier received $55,000, paid equally by National Union and Simpson's insurance carrier. All parties agreed the settlement was not a concession on the merits, and each insurance carrier agreed to compensate the other depending on the outcome of the litigation. Simpson and Vescom/National Union then filed cross-motions for summary judgment. In November 1995, the trial court denied Simpson's summary judgment motion and granted Vescom's and National Union's. This appeal followed.

██ When reviewing a grant of summary judgment, this Court examines the record to determine independently whether it supports the conclusion that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. V.R.C.P. 56(c)(3); see also *Security Pac. Nat'l Trust Co. v. Reid*, 615 A.2d 241, 243 (Me. 1992). In this dispute over parties' contractual obligations, the record consists primarily of the contract itself. We interpret the indemnification provisions of this document as we do all contract provisions — to give effect to the intent of the parties as that intent is expressed in their writing. See *Ejnes v. Carinthia Trailside Assocs.*, 153 Vt. 355, 359 n.3, 571 A.2d 49, 52 n.3 (1989). When the contract language is clear, the intent of the parties is taken to be what the agreement declares. *Karlen Communications, Inc. v. Mt. Mansfield Television, Inc.*, 139 Vt. 615, 617, 433 A.2d 290, 292 (1981).

In support of its claim, Simpson relies on § 2(g) of the contract.* In that section, Vescom agreed to:

> [a]ssume all risk of injury to persons, including himself, his employees and agents, and or damage to property in any manner resulting from or arising out of or in any manner connected with [Vescom's] operations hereunder, and [Vescom] agrees to indemnify and save Simpson harmless from any and all loss . . . caused by or resulting from any such injury or damage.

Simpson argues that this broad language requires Vescom to defend and indemnify Simpson against Hamelin's claims, even if Hamelin's injuries were caused by Simpson's own negligence.

---

*Simpson also relies on § 2(c) of the contract. As we hold that § 2(g) of the contract requires Vescom to indemnify Simpson, we need not address this argument.

■ We agree. This provision explicitly contemplates claims by security guards, who are employees of Vescom. Moreover, the parties used expansive and unambiguous language to define Vescom's obligation under this provision. Specifically, Vescom agreed to indemnify Simpson for losses resulting from or caused by injuries "in any manner connected with" the security services that Vescom provided for Simpson. An injury suffered by a security guard while the guard is on duty and on Simpson's premises is without question "connected with" Vescom's security operation.

■ Vescom presents two counterarguments, neither of which we find persuasive. Vescom first argues that the meaning of § 2(g) is ambiguous, because it appears to conflict with § 10 of the contract. In § 10, the parties attempted to limit Simpson's potential liability by affording Simpson the employer-immunity advantages of Vermont's workers' compensation law. See *Candido v. Polymers, Inc.*, 166 Vt. 15, 18, 687 A.2d 476, 478-79 (1996) (addressing issue of multiple employers in workers' compensation context). The contract designated security guards as Simpson's "special employees" and required Vescom employees to agree to this classification in writing. According to Vescom, Simpson did not intend that any claim for damages by an injured security guard would be brought outside the workers' compensation system. Thus, the parties could not have intended Vescom to indemnify Simpson for a claim such as Hamelin's. We do not accept this reasoning. Although the parties attempted to take advantage of the workers' compensation limited-liability provisions, they could not guarantee that the courts would treat Simpson as an employer for purposes of workers' compensation. At the time the contract was drafted, this Court had not yet addressed the issue. Cf. *id.* at 17-18, 687 A.2d at 478 (where employee is hired and paid by employment agency, but works on premises of, and is supervised by, manufacturing company, manufacturing company qualifies as statutory employer under workers' compensation act). The parties almost certainly would have considered the possibility that § 10 would not be effective in preventing claims such as this one, and allocated liability accordingly.

Next, Vescom argues that requiring it to indemnify Simpson for Simpson's own negligence offends the public policy underlying the law of premises liability. See *Dalury v. S-K-I, Ltd.*, 164 Vt. 329, 334-35, 670 A.2d 795, 799 (1995) (by placing responsibility for maintenance of land on those who own or control it, law of premises liability supports ultimate goal of reducing accidents). Citing such public policy concerns, a number of jurisdictions have held that "an indemnification

clause does not cover liability for the indemnitee's own negligence unless it expressly so states." *Furlon v. Haystack Mountain Ski Area, Inc.*, 136 Vt. 266, 269, 388 A.2d 403, 405 (1978); see, e.g., *Davis Constructors & Eng'rs, Inc. v. Hartford Accident & Indem. Co.*, 308 F. Supp. 792, 794-95 (M.D. Ala. 1968); *Heat & Power Corp. v. Air Prods. & Chems., Inc.*, 578 A.2d 1202, 1206 (Md. 1990). In *Furlon*, however, we noted that "the question is an open one in Vermont." *Furlon*, 136 Vt. at 269, 388 A.2d at 405. We declined to apply the rule in that case, where the parties, a ski resort and a manufacturer of ski lifts, were not marked by a disparity in bargaining power, and the contract merely allocated the cost of liability insurance. *Id.* at 269-70, 388 A.2d at 405.

■ Our decision in *Furlon* controls this case. Here, as in *Furlon*, this contract reflects an arms-length business deal, in which corporate parties divided certain risks and responsibilities. The indemnification clause at issue did nothing more than allocate to Vescom the cost of purchasing insurance to cover the risk. The language of the contract reflects this; the contract requires Vescom to "procure and maintain, solely at [Vescom's] expense, insurance policies . . . covering legal, contractual and assumed liability" and also mandates that "[c]ertificates of such coverage . . . make specific reference to the hold-harmless clause."

In short, Vescom's reliance on our decision in *Dalury* is misplaced. The considerations of public policy that motivated us in *Dalury*, such as unequal bargaining power, fairness, and the benefits of risk-spreading, are not present here. See *Dalury*, 164 Vt. at 332-33, 335, 670 A.2d at 797-98. Moreover, allocating liability for injuries suffered by security guards to Vescom does not significantly undermine Simpson's incentives to keep its premises reasonably safe. The contract with Vescom does not affect Simpson's liability for injuries suffered by other individuals at the plant, including Simpson's own employees and guests. Cf. *id.* at 335, 670 A.2d at 799 (if ski areas were permitted to obtain broad waivers of their liability from skiers, important incentive for ski areas to manage risk would be removed).

Although Simpson is listed as an additional insured on Vescom's insurance policy, National Union argues that it has no obligation to defend or indemnify Simpson for this claim. As we hold that Vescom is obligated to indemnify Simpson based on the terms of the contract, we need not address National Union's independent obligation to Simpson, if any, under the insurance policy. National Union does not dispute its obligation to defend and indemnify Vescom in this matter;

indeed, National Union and Vescom appear here represented by the same counsel. We therefore reverse and remand with instructions to enter judgment for Simpson.

*Reversed and remanded; the superior court is directed to enter judgment for defendant/third-party plaintiff Simpson Paper Co.*

**Gibson, J.,** dissenting. I respectfully dissent. Although I agree that parties may contract to allocate liability and require indemnification for loss, I believe the contract between Vescom Corporation and Simpson Paper Company did not justify holding Vescom liable in this instance.

Two important principles underlying tort liability are: (1) a party that causes loss should be held responsible for the damage therefrom, and (2) holding the responsible party liable serves as an incentive to prevent future occurrences of similar harm. See W. Keeton, et al., Prosser and Keeton on the Law of Torts § 4, at 22, 25 (5th ed. 1984). Any departure from these fundamental principles by private parties should be expressly agreed upon. Applying the common-law rule that parties to a contract are not presumed to intend that one party indemnify the other for the latter's own negligence unless the contract so states in clear and unequivocal terms, I would affirm the trial court. See *Davis Constructors & Eng'rs, Inc. v. Hartford Accident & Indem. Co.*, 308 F. Supp. 792, 794-95 (M.D. Ala. 1968); *General Accident Fire & Life Assurance Corp. v. Smith & Oby Co.*, 148 F. Supp. 126, 128 (N.D. Ohio 1957); *United States Fidelity & Guar. Co. v. Mason & Dulion Co.*, 145 So. 2d 711, 713 (Ala. 1962); *Fields v. Lawter Chems., Inc.*, 252 N.E.2d 120, 122 (Ill. App. Ct. 1969); *Heat & Power Corp. v. Air Prods. & Chems., Inc.*, 578 A.2d 1202, 1206 (Md. 1990); *Kansas City Power & Light Co. v. Federal Constr. Corp.*, 351 S.W.2d 741, 745 (Mo. 1961); see also *Foucher v. First Vt. Bank & Trust Co.*, 821 F. Supp. 916, 928 (D. Vt. 1993) (Vermont law generally bars indemnity for both intentional and negligent tortfeasors unless there is express agreement or circumstances are such that law implies right of indemnification); *Furlon v. Haystack Mountain Ski Area, Inc.*, 136 Vt. 266, 269, 388 A.2d 403, 405 (1978) (acknowledging generally accepted rule that "an indemnification clause does not cover liability for the indemnitee's own negligence unless it expressly so states").

An example of such language appears in *Davis Constructors & Engineers.* There, the court held that a nonnegligent subcontractor was required to indemnify the negligent contractor where the parties

had agreed that the subcontractor would indemnify the contractor for injuries and property damage "arising out of the work undertaken by the sub-contractor . . . *and arising out of any . . . other operation no matter by whom performed for and on behalf of the sub-contractor, whether or not due in whole or in part to conditions, act [sic] or omissions done or permitted by the contractor.*" 308 F. Supp. at 794.

Unlike the contract in *Davis Constructors & Engineers*, neither § 2(g) nor § 2(c)* of the parties' contract contains language that expressly requires Vescom to indemnify Simpson even if the loss is caused solely by Simpson's act or omission. In § 2(g), Vescom agreed to assume all risk "in any manner resulting from or arising out of or in any manner connected with" its operations. I do not agree that the language "in any manner connected with" is unambiguous, 167 Vt. at 20, 702 A.2d at 88, and that it clearly reflects the parties' intent to cover the situation here. The operations referred to in § 2(g) are presumably those that Vescom agreed to provide in § 1: making tours; checking doors, windows, and lights; reporting unusual incidents or hazardous conditions; and submitting reports on such incidents or conditions. If Robert Hamelin's injury was the result of negligence, that injury resulted from, arose out of, and was connected with Simpson's duty to reasonably inspect and maintain its facility, not the services Vescom agreed to provide under the contract.

At best, the language of § 2(g) is ambiguous. Ambiguous contract language is construed against the party that drafted it. *State v. Murray*, 159 Vt. 198, 205, 617 A.2d 135, 139 (1992). An even "greater degree of clarity is necessary to make [an] exculpatory clause effective than would be required for other types of contract provisions," *Colgan v. Agway, Inc.*, 150 Vt. 373, 375, 553 A.2d 143, 145 (1988) (emphasis omitted); thereby requiring strict interpretation against the drafter of the contract. *Szczotka v. Snowridge, Inc.*, 869 F. Supp. 247, 250 (D. Vt. 1994). As drafter, Simpson was in the better position to outline clearly the scope of Vescom's liability. Because it is not clear that the parties intended Vescom to indemnify Simpson for damages caused by Simpson's own actions, I would construe the provision in favor of Vescom and hold Simpson responsible for its own negligence.

---

*Because it found § 2(g) to be controlling, the majority did not address § 2(c), under which Vescom agreed to "[i]ndemnify and hold Simpson harmless against all claims or liabilities asserted by third parties, including governmental agencies, resulting directly or indirectly from [Vescom's] acts or omissions hereunder whether negligent or otherwise."

. Section 2(c) likewise cannot be interpreted to require indemnification. That provision pertains solely to liability "resulting . . . from [Vescom's own] acts or omissions." Regardless of whether Simpson was negligent in its duty to inspect, maintain, and repair its stairway, Hamelin's injuries were not caused by any act or omission by Vescom.

I also disagree that *Furlon*, 136 Vt. 266, 388 A.2d 403, controls. In *Furlon*, a contract between a ski lift manufacturer and the purchasing resort required the resort to assume all legal responsibility for any injury or property damage resulting from the erection or operation of the lift. *Id.* at 268, 388 A.2d at 404. When an injured resort employee sued the manufacturer for negligent manufacture and design and received a default judgment, we held that under the contract he could enforce the judgment against the resort. *Id.* at 270, 388 A.2d at 405. Although we went on to discuss public policy concerns such as disparity of bargaining power, the opinion began with a key factual distinction. The parties could not have intended that the provision requiring the resort to "assume[] all legal responsibility" merely required indemnification for the resort's negligence because the manufacturer had no duty for a negligent act or omission committed by the resort. *Id.* at 268-69, 388 A.2d at 405. As we noted, interpreting the clause to require the resort to indemnify only for its own negligence "would render that clause a nullity." *Id.* at 268, 388 A.2d at 405.

The Vescom-Simpson contract presents an entirely different situation. All duties performed by Vescom security guards occurred at Simpson's plant, for which Simpson had a duty of reasonable care for construction, inspection, and maintenance. As noted by the majority, Simpson declared itself the special employer of Vescom's employees. Therefore, Simpson, unlike the manufacturer in *Furlon*, ran the risk of being found to have a duty for accidents involving Vescom employees.

Under this approach, National Union would have no duty to defend or indemnify Simpson. Whether an insurer is required to indemnify a third party for its own negligence under a policy depends on whether the insured party is obligated to indemnify the negligent third party under the associated agreement. See *Fields*, 252 N.E.2d at 122; *Kansas City Power & Light Co.*, 351 S.W.2d at 748-49; 7A J. Appleman & W. Berdal, Insurance Law and Practice § 4497.02 (1979). Interpretation of an insurance policy "cannot be decided upon any supposed 'intent' evidenced merely by the insurance requirement, when the full contract language is before [the court] for construction, and when the

policy of insurance (approved by [the negligent party]) clearly expresses its coverage." *Kansas City Power & Light Co.*, 351 S.W.2d at 748. Because the contract between Simpson and Vescom does not explicitly require Vescom to indemnify Simpson for Simpson's own acts or omissions, I would hold that National Union has no duty to defend or indemnify Simpson.

I point out that this interpretation is supported by the certificate of insurance issued by National Union. This document, like the terms of the insurance policy, demonstrates the insurer's and the insured's intent when drafting the policy. *Utica Mut. Ins. Co. v. Central Vt. Ry.*, 133 Vt. 292, 295, 336 A.2d 200, 203 (1975). Here, National Union specifically noted that Simpson was added as an "additional insured only with respect[] to the negligent acts, errors or omissions *[of Vescom's] employees* in the performance of their agreed upon duties." (Emphasis added.) This language is yet another indicator that none of the parties at the time of contract formation and purchase of insurance intended Vescom to indemnify Simpson for liability caused by Simpson's own acts or omissions.

I am authorized to say that Justice Morse joins in this dissent.