# Edna Evarts v. Gilbert L. Forte, Jr., Mary L. Forte, and Ralph E. Humiston

[376 A.2d 766]

No. 85-76

Present: Barney, C.J., Daley, Larrow, Billings, and Hill, JJ.

Opinion Filed June 7, 1977

*Carroll, George, Hill & Anderson*, Rutland, for Plaintiff.

*Hanford G. Davis*, Brandon, for Defendants.

**Hill, J.** This case is an appeal from a jury verdict and judgment order entered thereon, returned in favor of the plaintiff-appellee, Edna Evarts, in Rutland Superior Court. Following the jury's verdict, the defendants' motions for a directed verdict and for a new trial were denied. The defendants have filed timely appeal from the final judgment and the order denying their motions.

■ Before stating the facts giving rise to this cause of action, we note that jury verdicts are not easily to be set aside. It is the function and exclusive province of the jury to determine the true facts in any dispute. Therefore, on appeal, this Court is bound to view the evidence in that light most favorable to the prevailing party. *Gilbert* v. *Churchill,* 127 Vt. 457, 462, 252 A.2d 528 (1969).

With the above rule in mind, the pertinent facts are as follows. Sometime in October of 1972, the defendants-appellants, Gilbert and Mary Forte, listed for sale certain property owned by them in the Town of Brandon, Vermont, with Ralph Humiston, a real estate broker and a named defendant in this action.

On October 21, 1972, Humiston brought the appellee, her son Roy Evarts, and one John Perry, to visit the Forte property. The appellee, a resident of New Jersey, had expressed an interest in acquiring some real estate in the area as a retirement home, and, to this end, had made an appointment with Humiston to view some possible sites. The appellee was shown the property, which consisted of some four acres of land and a modular home. It was understood that the appellants were selling the house plus approximately one acre of land. The appellee was given a rough, general description of the realty to be conveyed. At that time, Mrs. Evarts expressed her satisfaction with the property and declared her desire to purchase it for the asking price of $35,000.00. Prior to leaving the premises, the appellee gave Humiston her check for $2,500.00, which he agreed to deposit in an appropriate escrow account as a down payment on the Forte property.

Shortly after her return to New Jersey, the appellee received from Humiston the original and two copies of a completed standard form deposit receipt and sales agreement. This agreement provided that closing would be had on the 20th of June, 1973, and further stated that should the purchaser fail to

complete the purchase per the agreement the sellers would be entitled to keep the deposit money as liquidated damages. The property to be conveyed was described as an "Improved lot of one acre (more or less) and presumed to be one acre plus, rather than minus." Although she was somewhat troubled by the vague description of the parcel, the appellee signed the agreement and returned it to Humiston on November 2, 1972.

Subsequent to these events, the appellee received a phone call, followed by a letter, from Mrs. Forte asking her whether she would object to moving the closing to a date sometime in April of 1973. The appellee responded, stating that April would be fine with her.

The appellee next returned to visit the Fortes' property on December 1, 1972. Once again, the appellee was accompanied by Mr. Humiston and John Perry. The boundaries of the lot were again discussed, and the appellee was shown a 50-foot right-of-way on the property reserved by the Fortes' predecessor in title. Mrs. Evarts became quite upset and stated her belief that the property had "shrunk" from her original visit. At trial, Mrs. Evarts' reaction was affirmed by the testimony of John Perry, who stated that the description of the property had changed "immensely" since the October, 1972, view. Accordingly, Mrs. Evarts declared she was no longer interested in acquiring the property and that the deal was off.

Sometime after returning to New Jersey, the appellee received a copy of the deposit receipt and sales agreement signed by the appellants. This document was identical to that signed and returned by the appellee in November except that the date for the closing had been changed to April 2, 1973. Mrs. Evarts testified at trial that this was the first time she had been provided with a copy of the sales agreement containing the altered closing date. Mrs. Evarts never signed this document subsequent to its alteration and return to her.

By her letter of February 16, 1973, the appellee re-affirmed her prior declaration that the sale was terminated and demanded return of her deposit. The appellants responded through their counsel, averring that they were ready and willing to convey the described premises, and that Mrs. Evarts' down payment would be deemed forfeited if she failed to culminate the transaction. On April 9, 1973, no closing having occurred, the appellants demanded and received from Humiston the $2,500.00 deposit.

The appellee brought suit against the Fortes and Humiston seeking return of her down payment. In her amended complaint, the appellee claimed that the appellants' request to change the closing date constituted a counter-offer never properly accepted by the appellee. Therefore, appellee alleged, no contract was created and she was entitled to return of her deposit.

Following a brief trial, the cause was submitted to the jury on the following charge:

> [I]f from the evidence in this case you find that the offer was revoked by the plaintiff, Edna Evarts because either that the date was changed or that the boundaries were changed or that the boundaries were changed before her offer was even accepted by defendants or if you find that defendants rejected Edna Evarts' offer and then tendered to her a new offer which was never accepted by her, you must find there was no contract.

Obviously, the jury determined that no contract existed, and brought in its verdict for the appellee.

The sole question posed for our review is whether there was a binding contract of sale existing between the appellee and the defendant Forte. It is our conclusion, for reasons to be further set out, that no contract of any legal consequence did exist between the parties. Accordingly, we affirm the order below.

██ It is, of course, a basic tenet of the law of contracts that in any agreement between a prospective vendor and purchaser the offer and acceptance must be concurrent and there must be mutual manifestations of assent or a "meeting of the minds" on all essential particulars. The parties must agree to the same thing in the same sense. 91 C.J.S. *Vendor and Purchaser* § 24. Accordingly, if an instrument that purports to be a complete contract does not contain, or erroneously contains, the substantial terms of a complete contract, it is ineffective as a legal document. M. Friedman, Contracts and Conveyances of Real Property § 1.3 (3d ed. 1975). In the instant case, the appellee sought to avoid forfeiture of her deposit money on the strength of her claim that the deposit receipt and sales agreement was defective in two respects: (1) The description of the subject matter property was vague and uncertain; (2) The change in closing dates requested by the appellants was a

counter-offer never accepted in proper fashion by the appellee. Either of these grounds, appellee says, provides ample justification for her rescission.

■ ■ As for the first contractual defect noted by the appellee, it appears from the record and the agreement itself that the parties shared no mutual agreement as to what the description purported to convey. It is never enough that the parties think they have made a contract; they must express their subjective intent in a manner that is capable of understanding. Vagueness, indefiniteness and uncertainty of expression as to any of the essential terms of an agreement have been held to preclude the creation of an enforceable contract. 1 Corbin on Contracts § 95 (1963).

In fact, it appears that some jurisdictions have regarded the above rule to be particularly applicable to situations like that here where only a portion of a larger tract of land owned by the seller is to be conveyed. The general rule followed in cases of that sort is that instruments which do not definitely separate the portion to be sold from the tract remaining are insufficient. See Note, *Equity - Failure to Set Out Boundaries in Description of Land,* 30 Notre Dame Lawyer 313 (1955). Here, the sales agreement was clearly deficient in this regard. It appears from the record that the parties themselves were never clear where the boundaries would be. There were, at best, only approximate boundaries, and as such they did not suffice to identify one section of land to the exclusion of the remainder.

This case, then, is readily distinguishable from the situation posed in *Meyer* v. *Furgat,* 133 Vt. 265, 336 A.2d 169 (1975). In that case a seller tried to avoid his agreement by raising a question as to the identity and amount of land to be conveyed subject to a sales contract. There this Court ruled:

> Although the measure of the property to be conveyed turned out to vary from the first understanding, the identity of the property was never in any dispute. Both buyer and seller knew what was meant. . . . [*Id.* at 267.]

Here, there never was any "first understanding", or, for that matter, subsequent agreement as to the property. The contract, therefore, was fatally defective since there was no agreement whatsoever as to the identity of the thing to be sold. 4 Williston on Contracts § 567A (3d ed. 1961).

■ ■ The second shortcoming in the deposit receipt and sales agreement cited by the appellee raises questions as to the nature of the proposed change in the closing date. Where, as here, contracts are governed by the Statute of Frauds (12 V.S.A. § 181), any changes made are subjected to the same requirements of form as the original provisions. *Nikora* v. *Mayer*, 257 F.2d 246, 249 (2d Cir. 1958). In this same vein, we note the established rule of contract formation that an acceptance on terms differing from those offered is a counter-offer and is not binding until accepted in its own right. *Ackerman* v. *Carpenter*, 113 Vt. 77, 81, 29 A.2d 922 (1943); *Hill* v. *Bell*, 111 Vt. 131, 135, 11 A.2d 211 (1940).

There can be no doubt that in the present case the change in closing date requested by the appellants was, in effect, a counter-offer requiring the appellee's assent. The record viewed, as it must be, in the light most favorable to the appellee reveals that this counter-offer was never reduced to writing and forwarded to the appellee for her signature before she declared the transaction terminated. It is true that appellee did generally agree to a change in the date for closing. However, the date change was never finalized and sent to her for her formal consent.

This case, we feel, is distinguishable from the facts present in *First National Bank* v. *LaPerle*, 117 Vt. 144, 86 A.2d 635 (1952), where we ruled that a written offer for the purchase of land may be accepted orally provided the person making the signed, written offer is the party to be charged. In this instance, the appellee, the person sought to be charged, was not the offeror of the subject contract. The offer originally made and signed by the appellee was not that which the appellants sought to charge her with. Therefore, under the rule articulated in *First National Bank* v. *LaPerle, supra,* and the purposes of the Statute of Frauds, it is clear that, given these facts, the agreement in question could have no legal consequences until formally executed. The record demonstrates that the changed agreement was never signed by the appellee prior to her rescission. No contract, then, existed.

*The judgment order of the Rutland Superior Court is affirmed.*