## Gerald C. Milot v. Rena E. Calkins

[554 A.2d 260]

No. 86-433

Present: **Allen,\* C.J., Peck, Dooley and Morse, JJ., and Barney, C.J. (Ret.), Specially Assigned**

Opinion Filed November 18, 1988

*Carl H. Lisman* and *Michael Marks* of *Lisman & Lisman*, Burlington, for Plaintiff-Appellant.

*Edwin H. Amidon, Jr.*, Burlington, and *Heather R. Wishik (On the Brief)*, Montpelier, for Defendant-Appellee.

**Morse, J.** Plaintiff Gerald C. Milot appeals a decision by the Chittenden Superior Court denying him specific performance and damages on a written contract for the sale of land owned by defendant Rena E. Calkins. The trial court determined that the par-

---

\* Chief Justice Allen heard oral argument but took no part in the decision.

ties did not mutually agree to all essential contract terms and therefore held the contract unenforceable. We affirm.

In 1984, Rena Calkins listed fifty acres of her one-hundred acre parcel on Dorset Street in South Burlington with a realtor, William Rowell, for a selling price of $800,000. She hoped thereby to raise the funds necessary to purchase another parcel of land, known as the McKenzie property, on Intervale Road in Burlington. Miss Calkins received one offer at the asking price, but the buyer did not complete the sale. She received a second offer at $650,000, but she turned this one down. The realtor, Mr. Rowell, then contacted Mr. Milot, to advise him of the availability of the Dorset Street property.

Mr. Milot expressed an interest in acquiring ninety acres of the Dorset Street property. On April 10, 1985, he made an offer through the realtor to purchase ninety acres for $550,000. Miss Calkins rejected it. On April 12, 1985, Mr. Milot made a second offer, presenting to Miss Calkins a signed Deposit Receipt and Sales Agreement, the document at issue in this case. Miss Calkins made certain small changes, initialed them, signed the document (now a counteroffer), and returned it to Mr. Milot. Mr. Milot in turn initialed the additions to the contract made by Miss Calkins. He then handed the document to the realtor to return to Miss Calkins. The following morning, April 13, Miss Calkins advised Mr. Milot that she did not wish to continue with the sale.

The parties dispute whether Miss Calkins had received Mr. Milot's acceptance before she revoked her offer. They also disagree whether the mere delivery of the signed sales agreement to Mr. Rowell constituted an acceptance. Because we affirm the trial court's decision that no enforceable contract was created, we need not resolve these disputes. Even if all the formalities of offer and acceptance have been satisfied, if the agreement itself does not evidence a "meeting of the minds" on all essential particulars, as the trial court found, there is no valid contract to enforce. *Evarts v. Forte*, 135 Vt. 306, 309, 376 A.2d 766, 768 (1977).

The problem with the April 12 agreement concerns a clause referring to an exchange of the McKenzie property, the land on Intervale Road in Burlington that Miss Calkins wished to obtain, for some of the value of the Dorset Street property. The parties apparently intended that Mr. Milot purchase the McKenzie property and then deed it to Miss Calkins in exchange for land, thereby allowing Miss Calkins to benefit from a tax deferral be-

cause her immediate capital gain in the Dorset Street property sale would be reduced by the value of the McKenzie property.[1]

The "exchange" clause is susceptible to more than one interpretation. It is unclear whether Mr. Milot was to deed over the property *in addition* to paying the sale price of $550,000 or whether the value of the McKenzie property was to be *deducted* from the $550,000. Which interpretation is correct is obviously essential to this agreement.[2]

Mr. Milot claims that the sales agreement unequivocally intends the latter, because it contains this language: "TOTAL PURCHASE PRICE IS Five hundred fifty thousand dollars." In his view, this can only mean that the value of the McKenzie property is subsumed within the $550,000. The remaining portions of the agreement, however, cast considerable doubt on this interpretation. After stating the "total purchase price," the agreement continues:

> BALANCE OF THE PURCHASE PRICE IS TO BE PAID AS FOLLOWS, TO WIT: Contingent upon: . . . 5). This transaction is to be part of a tax deferred exchange with the McKenzie property on Intervale Road, Burlington.

The words, "This transaction is to be part of . . . ," indicate that the sale of the property for $550,000 is part of a larger transaction involving the purchase price *and* the exchange. Notably, the contingency is not written: "This transaction *includes* a tax deferred exchange . . . ." Furthermore, the agreement states that the bal-

---

[1] There is evidence, however, suggesting that the purpose of the exchange was not clearly understood by both parties. On April 26, 1985, Mr. Milot wrote to Miss Calkins advising her of his intent to hold her to the agreement. The letter includes this curious paragraph:

> The Agreement contemplates a tax deferred exchange for your benefit. The McKenzie property on Intervale Road in Burlington, which you indicated you would acquire, is available for your purchase, and you should take appropriate action.

An invitation to Miss Calkins to purchase the McKenzie property is not consistent with the scheme to exchange the parcels.

[2] The contract is also silent on a number of other critical terms. How large is the McKenzie property? What was the purchase price? How and when was the exchange to take place? Under what terms? Who would absorb the costs incident to purchasing the McKenzie property?

Mr. Milot contends that these identifying factors of the exchange property were clearly understood. We do not premise our decision on these uncertainties. See *Meyer v. Furgat*, 133 Vt. 265, 267, 336 A.2d 169, 171-72 (1975).

ance must be paid "contingent upon" the occurrence of certain events, among them the tax deferred exchange. Again, the language suggests that the agreement itself does not include the exchange; rather, the agreement will be effective only upon the realization of the exchange. Finally, the "balance" quite plausibly refers to the balance of the $550,000 after the $30,000 deposit is discounted.

The agreement therefore presents an ambiguous material term as the purchase price is subject to two vitally different interpretations. Given the ambiguity on the face of the document, the trial court correctly turned to parol evidence of the parties' understanding of their attempted contract. *Trustees of Net Realty Holding Trust* v. *AVCO Financial Services of Barre, Inc.*, 144 Vt. 243, 249, 476 A.2d 530, 533 (1984) (if, as a matter of law, a contract provision is found to be ambiguous, the trier of fact may use extrinsic evidence to resolve the ambiguity).

The court heard considerable conflicting testimony from the parties and witnesses. Both Mr. Milot and Miss Calkins testified as to their understanding of the tax deferred exchange. The court found Miss Calkins's testimony to be credible and consonant with her previous actions.[3] It found no evidence to suggest that Miss Calkins understood the agreement in the sense advanced by Mr. Milot. While the court might have resolved the ambiguity in Miss Calkins's favor, it decided that the ambiguity could not be resolved one way or the other. The court found that no mutual understanding ever existed between the parties.

Our review of the trial court's findings is deferential. We will set aside a finding of fact only if it is clearly erroneous. V.R.C.P. 52; *Solomon* v. *Design Development, Inc.*, 143 Vt. 128, 130, 465 A.2d 234, 236 (1983). In this case, the court's finding that the parties to this agreement did not share a mutural understanding of all essential terms is supported by the evidence.

---

[3] For example, it was not contested that Miss Calkins had recently rejected an offer from a third party to buy fifty acres of the Dorset Street land for $650,000. It is not likely that she would immediately thereafter consent to sell ninety acres for $550,000. It is much more plausible that she expected to receive the McKenzie property, with an approximate value of $250,000, in addition to the $550,000.

*Affirmed.*