# Theodore Ejnes, David and Miriam Kleid, Steve and Rose Miednik v. Carinthia Trailside Associates; Donald R. Swain

[571 A.2d 49]

No. 88-143

Present: Allen, C.J., Peck, Gibson and Dooley, JJ., and Barney, C.J. (Ret.), Specially Assigned

Opinion Filed December 1, 1989

Motion for Reargument Denied December 22, 1989

*McKee, Giuliani & Cleveland,* Montpelier, for Plaintiffs-Appellees.

*King & King,* Waitsfield, for Defendants-Appellants.

**Dooley, J.** This case involves the construction of a termination clause of a purchase-and-sale agreement. The defendants in the trial court were Carinthia Trailside Associates, a limited partnership, and Donald Swain, a general partner of Carinthia.

The plaintiffs were persons who signed agreements with defendant Carinthia (signed by defendant Swain) to purchase condominium units. Relying on a stipulation of facts, defendants moved for summary judgment, pursuant to V.R.C.P. 56, of plaintiffs' claims for return of their deposits because the condominium purchase did not go through. The trial court granted summary judgment in favor of plaintiffs and defendants appealed. We hold that material issues of fact exist between the parties and that the granting of summary judgment was error. We therefore reverse and remand for trial.

The following facts were stipulated. The parties in the case at bar entered into purchase-and-sale agreements for two condominiums built by defendants. Defendants offered a $3500-to-$5000 discount per unit if the plaintiffs would sign the agreement and deposit ten percent of the purchase price of their respective units before March 1, 1984. On February 28th, plaintiffs signed the purchase-and-sale agreements and made the deposits. Under the agreements, closing on the units was to take place within ten days of completion but no later than March 19, 1984. Each agreement contained an addendum dealing with mortgage financing. The addendum made the agreement contingent on the purchasers obtaining approval of a mortgage for a sum certain at a specified rate. This contingency was deemed waived, however, unless the purchasers notified the sellers by certified or registered mail, return receipt requested, no later than March 19, 1984, of the purchasers' inability to obtain mortgage approval. If notice of unavailability of financing was given under the addendum, the purchaser was entitled to return of the deposit.

With defendants' assistance, plaintiffs sought financing from the Factory Point National Bank.[1] As of March 19, 1984, however, the bank had not acted on plaintiffs' mortgage applications. On March 20, 1984, defendant Swain had actual knowledge that the bank had not acted on the mortgage appli-

---

[1] It appears that defendants presented to plaintiffs a document entitled "*Financing Terms* Glen Run Condominiums" which described two alternative financing plans. Apparently, these were plans that were to be available through the Factory Point National Bank.

cations. On March 22, 1984, he notified plaintiffs by letter that he had conferred with an officer of the Factory Point National Bank and that "[H]e is quite positive that the commitment will be forthcoming, but that some additional time will be required to process the loan." The letter indicated that the units had been ready for occupancy since March 1st, but requested that the closing be delayed to a date no later than April 6th to allow plaintiffs' financing source adequate time to provide the funds.

On April 10, 1984, plaintiffs' mortgage applications were denied.[2] The notice from the bank stated: "We do not grant credit to any applicant on the terms and conditions you requested." Plaintiffs immediately requested that their deposits be refunded. Defendants refused to refund the deposits, citing plaintiffs' failure to provide notice of unavailability of financing by March 19, 1984.

The stipulation does not show when defendants were ready to convey title. Defendants alleged that they were ready and able to convey title on or before March 19, 1984 and filed an affidavit to that effect. Plaintiffs denied this allegation. The stipulation indicates that plaintiffs were never given written notice of the date of the completion of the units but, at some point, were given oral notice that the units were ready on March 1, 1984. The purchase-and-sale agreement calls for the sellers' architect to certify when a unit is ready for occupancy, with closing to take place within ten days thereafter but no later than March 19, 1984. As indicated above, the March 22nd letter stated that the units had been ready since March 1st.

Defendants' motion for summary judgment argued that the purchase-and-sale agreements were clear and unambiguous, that the agreements stated clearly that time was of the essence, and that plaintiffs failed to comply with the terms of the agreements. Plaintiffs responded that there were material issues of fact, because it was disputed whether defendants were ready to close on March 19, 1984 and that the March 22nd letter promised financing and obviated the need for notice under the adden-

---

[2] Apparently, plaintiffs learned of the denial by telephone call from defendant Swain on April 10th. The official notice from the bank is dated April 16th.

dum. Plaintiffs' argument, then, is that defendants' conduct constituted a waiver of strict compliance with the notice requirement.

The trial court's opinion and order concluded that the failure to give notice of the unavailability of financing by the March 19th deadline was not effective to remove the financing contingency "because the financing application was still being processed." It went on to conclude that defendants were entitled to notice only when the financing fell through and they received such notice, albeit in a form different from that specified in the addendum. Relying primarily upon *Town of Newport v. State*, 115 N.H. 506, 507, 345 A.2d 402, 403 (1975), the court found that the form of notice was not determinative and entered judgment for plaintiffs.

■ This case is unnecessarily difficult because of the wholly inadequate state of the record on which the trial court made its decision. As discussed more fully below, we find the stipulation of facts to be incomplete, a deficiency which is particularly critical when we are considering a motion for summary judgment. Here, the parties opposing summary judgment were entitled to the "benefit of all reasonable doubts and inferences in determining whether a genuine issue exists." *Cavanaugh v. Abbott Laboratories*, 145 Vt. 516, 520, 496 A.2d 154, 157 (1985). However, only necessary inferences can be drawn from stipulated facts. See *Digregorio v. Champlain Valley Fruit Co.*, 127 Vt. 562, 564, 255 A.2d 183, 185 (1969). Since the resolution of this case must involve inferences to be drawn by the factfinder, the inability to do so leaves the record fatally incomplete. See *Winooski Urban Renewal Agency v. Green Mountain Power Corp.*, 134 Vt. 497, 498, 365 A.2d 514, 515 (1976).

Defendants' theory here and in the trial court focused exclusively on the March 19th date by which plaintiffs were to give notice of inability to obtain financing. Defendants ignore, however, that March 19th was also the last date for closing and that closing was to occur ten days after each unit was ready for occupancy as certified by defendants' architect. Although it seems clear that the architect never certified when the units were ready for occupancy, we cannot tell from the stipulation what, if

anything, occurred on or before March 19th with respect to the closing. Although defendants assert that they were prepared to close, there is no indication that they tendered performance or showed a willingness to perform so as to put plaintiffs in default on that date. See *Drew v. Bowen*, 102 Vt. 124, 127, 146 A. 254, 255 (1929). Thus, we cannot tell whether defendants performed their "concurrent and dependent" undertakings that are a prerequisite to enforcing the contract against plaintiffs. *Id.*

██ The facts are consistent with at least three theories under which plaintiffs could recover the deposit here.[3] The language of the contract of sale is vague, and apparently inconsistent, on the interrelationship between the closing date and the date of notice of financing availability. There is an inconsistency because, if the units were ready for occupancy on March 1st as defendants asserted, and the architect gave notice, the closing would have to occur on March 11th under the contract, eight days before plaintiffs could cancel for lack of financing. It was unlikely to be accidental that the last closing date and the last date for giving notice of financing availability were the same day. It may be that the proper construction of the contract is that plaintiffs were entitled to give notice of financing availability any time on or before the closing date.[4] The proper construction of the vague contract may have to be determined from

---

[3] We agree with defendants that the trial court's construction of the contract cannot be sustained on this record. The court held that the requirement to notify the sellers by March 19th of the unavailability of financing was triggered only if financing had been refused by that date and not if the financing application was still pending. We must construe a contract to give effect to the intent of the parties as expressed in their writing. See *Agway, Inc. v. Marotti*, 149 Vt. 191, 194, 540 A.2d 1044, 1046 (1988). There is nothing in the contract to suggest that the notification obligation was conditioned on a financing decision. We emphasize, however, that the contract is ambiguous and extrinsic evidence might support the construction the trial court adopted.

We do not preclude the possibility that trial will disclose further issues. For example, plaintiffs have asserted that the financing source here was, in effect, an agent of defendants.

[4] Defendants emphasize that time was of the essence in this contract in arguing that only a notice given on or before March 19th could be effective to cancel the contract. The fact that time is of the essence in a contract for sale of land relates only to its enforceability in equity by specific performance. *Mouat v. Wolfe*, 150 Vt. 637, 639, 556 A.2d 99, 101 (1989). Thus, defendants' right to keep the deposit in an action at law is not dependent on whether time was of the essence in the sales contract.

extrinsic evidence which is not included in the stipulation. See *Milot v. Calkins*, 150 Vt. 537, 540, 554 A.2d 260, 262 (1988).

Second, the contract may have terminated on March 19th when closing did not occur and the communications thereafter may be viewed as incomplete negotiations to establish a new contract. In this respect, the facts bear some resemblance to those in *Evarts v. Forte*, 135 Vt. 306, 376 A.2d 766 (1977). In *Evarts*, the parties agreed in writing to a June 20, 1973 closing date for sale of land but the seller thereafter asked to move the closing to a date in April, 1973. Although the buyer orally agreed to the change, she refused to sign the new writing and asserted the changed closing date as one ground for not going forward with the purchase. In the resulting suit over the deposit money, this Court held that changes in the closing date had to be in writing to fulfill the statute of frauds and that in the absence of a written acceptance of the new closing date, there was no contract of sale. See *id.* at 311, 376 A.2d at 769. For this reason, among others, the court ordered the return of the deposit.

In this case, the contract specified a March 19th closing, and in the absence of an attempt to close on that date, defendants' actions may have amounted only to an offer for a new contract with a different closing date. Again, additional facts are necessary to determine the status of the original contract after March 19th and the relationship between the parties.[5]

Third, there may have been some kind of waiver of the notification deadline. In *Meyer v. Furgat*, 133 Vt. 265, 266, 336 A.2d 169, 171 (1975), an action for return of a deposit and for breach of contract damages, the contract set closing at thirty days after the purchaser obtained an Act 250 permit. The closing did not occur during that time because on investigation it turned out that the parcel contained an extra two acres that neither

---

[5] It is also possible that a new contract was formed as a result of the actions of plaintiffs in response to defendants' suggestion of a new closing date. We do not know, however, how plaintiffs responded to defendants' proposal. If there were a new contract, the trial court would have to determine what, if any, finance contingency clause was intended to be contained therein.

party was aware of and the parties were negotiating how to handle the extra acreage. Finally, the purchaser agreed to pay an additional sum demanded by the seller for the extra acreage and sought unsuccessfully to close the sale. This Court found that the seller had "foregone his right to insist on performance of [the closing date] condition" and could not set up the late closing as a defense to the suit for return of the deposit. *Id.* at 268, 336 A.2d at 172.

As in *Meyer*, defendants may have foregone their right to insist on notice of the unavailability of financing by extending the closing date beyond March 19th. Certainly, defendants are in the tenuous position of extending the closing date because financing had not been determined and insisting on the deadline for notification of the unavailability of financing. We cannot find, however, that the undisputed facts showed a waiver of the notice date as a matter of law, the requisite finding for a grant of summary judgment. See *Price v. Leland*, 149 Vt. 518, 521, 546 A.2d 793, 796 (1988). Without facts showing the intention of the parties in the attempted extension of the closing date, we cannot determine the legal effect of that extension on plaintiffs' right to cancel for lack of financing.

Although we conclude that the trial court should not have granted summary judgment for plaintiffs, the record does not support a grant of summary judgment for defendants. Accordingly, the case must be remanded for a fuller development of the facts for summary judgment or for trial.

*Reversed and remanded.*