Belknap,
May 27, 1940. } No. 3157.

ANNE K. BISSON, *Adm'x*

*v.*

WINNIPESAUKEE AIR SERVICE, INC. & *a.*

74

*Cheney, Nighswander & Lord* (*Mr. Nighswander* orally), for the plaintiff.

*Ivory C. Eaton* (by brief and orally), for the defendants.

MARBLE, J. The servant of a general employer who is hired out to another for a particular service becomes ordinarily the servant of the latter during the performance of that service. *Gagnon* v. *Dana*, 69 N. H. 264. And "this principle has full application to the master and servant relation" under compensation laws (*Parsons* v. *Daly*, 114 Conn. 143, 150), except, of course, in the case of those statutes which contain a provision to the contrary. 71 C. J. 403, 404. The workmen's compensation law of this State contains no such restrictive provision.

In determining the relation between the workman and the person to whom he is hired out, the decisive inquiry is whether that person has the right to control the servant and direct the details of his work. If the servant is subject to such direction and control, he is for the time being the servant of the temporary employer. *Manock* v. *Company*, 86 N. H. 104, 106, and cases cited. See, also, *McCarthy* v. *Souther*, 83 N. H. 29, 37; *Porter* v. *Company*, 83 N. H. 334; *Hutchins* v. *Insurance Co.*, 89 N. H. 79; *Donovan* v. *Mills*, 90 N. H. 450.

In the present case the trial court has found that the decedent from the time he reported at The Weirs up to the moment of the accident was under the direction and supervision of the Air Service and that he was therefore in the employment of that company at the time he was killed. These findings are fully warranted by the evidence. The president and service manager of Pynn & Brown testified that he had nothing at all to do with Bisson after he left their garage, and the treasurer and general manager stated that Bisson "was to take his orders from the Winnipesaukee Air Service."

Section 1 of chapter 159 of the Laws of 1937 (in force at the time of the decedent's death), after enumerating the employments covered by the compensation act, provides that the act "shall not apply to workmen outside of the state." It should be noted that the words "outside of the state" do not refer specifically to the place where an accident occurs but are used to designate a definite class of workmen. Fairly construed, the limitation applies to workmen who, although in the service of one who has accepted the provisions of the New Hampshire act, are nevertheless regularly engaged in work in another state. If the Legislature had intended the act to be inoperative whenever a workman in the course of his employment crosses the state boundary, it is probable that words which more clearly express that intent would have been chosen.

By the terms of the policy which the Phoenix Indemnity Company issued to the Air Service that company agreed "as respects personal injuries sustained by employees" of the Air Service, "including death at any time resulting therefrom," to pay "to any person entitled thereto under the Workmen's Compensation Law" the "entire amount of any sum due." This undertaking is declared by the policy to be a direct obligation enforceable against the company "in any manner permitted by law, whether claims or proceedings are brought against the Company alone or jointly with" the Air Service. Furthermore, by a rider attached to the policy, coverage is extended to employees sent by the employer "to perform duties temporarily or irregularly outside the State of New Hampshire."

Liability is denied, however, on the ground that the premium paid by the Air Service was based on the total remuneration paid its employees and that the decedent received no remuneration from the Air Service. This contention ignores the substance and effect of the arrangement made with Pynn & Brown for the division of the decedent's time. The Air Service was none the less his paymaster because the wages which he earned while working for that corporation were conveniently paid to Pynn & Brown.

The advance premium paid the indemnity company was the minimum premium. The policy was issued July 2, 1937, and expired one year from that date. The basis of computation for the final premium payment included the remuneration paid all employees, and in order to make this computation the Indemnity Company was entitled to an audit of the Air Service's books within a year after the expiration of the policy. The court has found on sufficient evidence that the Air Service kept records from which the amount paid for the decedent's services could be ascertained without difficulty. The president of the Air Service testified: "We carried everything against his [Bisson's] name, of his hours and everything . . . showing the hours he was paid for and worked for us."

The Indemnity Company's exception to the denial of its motion to set aside the decree is denied. The plaintiff's exception to the dismissal of the petition as to the Air Service is sustained. All other exceptions are understood to be waived.

*Judgment for the plaintiff.*

All concurred.