### Robert Mercier v. Shirley Holmes, et als

(125 A2d 790)

May Term, 1956.

Present: **Jeffords, C. J., Cleary, Adams and Hulburd, JJ. and Barney, Supr. J.**

Opinion Filed October 2, 1956.

*Graves & Mehlman* for the plaintiff.

*John Swainbank* for defendants Holmes and Employers Liability Insurance Corp.

*John H. Downs* for defendants Jackson and Aetna Casualty Co..

**Hulburd, J.** This is a matter which originated before the Commissioner of Industrial Relations. The claimant was Robert Mercier. At the hearing before the Commissioner it was conceded "That the claimant, Robert Mercier, was injured by accident, arising out of and in the course of his employment resulting in finger loss, the extent of which is to be determined by the hearing, and is entitled to workmen's compensation benefits from either Shirley Holmes and his insurance carrier, The Employers Group, or Elmont Jackson and his insurance carrier, The Aetna Casualty Company."

As a result of the hearing, the Commissioner found that the compensation, which all parties agreed the claimant was entitled to, was compensation for which Shirley Holmes and the Employers Liability Assurance Corporation were liable. They appealed to Essex county court on eight questions duly certified by the Commissioner. At the close of the evidence in the trial held in county court, counsel for all

parties agreed that the eight questions certified by the Commissioner might be reduced to a single determinative question: "By whom was Mr. Mercier employed at the time of the accident, November 1, 1954?" By so agreeing, the parties eliminated from consideration all other matters, and this appeal will be dealt with on that basis. It must be kept in mind that the parties had conceded earlier that the claimant was entitled to compensation from one or the other of the two defendants and insurance carriers.

The agreed question was submitted to the jury by means of a special verdict, the jury finding that the claimant was employed by Shirley Holmes at the time of the accident. It is Shirley Holmes, together with his insurance carrier, who are appellants here. This means that the controversy as it comes to us is not one between employer and employee but between two employers and, in last analysis, between two insurance carriers. Thus, under a law which obviously was designed for the protection of the workingman, we have the unhappy spectacle of a claimant obliged to carry his cause through the courts, so that the insurance carriers may litigate at length as to which shall be the one obliged to pay an admittedly just claim for compensation.

At the conclusion of the evidence in the court below, defendant, Shirley Holmes, and the Employers Liability Assurance Corporation moved for a directed verdict in their favor. This motion was denied. Exceptions to this denial, to the admission of evidence, and to the court's instructions to the jury are the matters for our consideration here.

The appellants frankly concede that the basic facts are undisputed and that there is no real conflict in the facts as given in the testimony of Robert Mercier, Shirley Holmes or Elmont Jackson. The testimony disclosed the following situation:

The claimant, Robert Mercier, received the injury, for which he is seeking compensation, on November 1, 1954. For about three years previous to this time, he had been employed by Shirley Holmes for whom he acted as board sawyer, when Holmes' mill was running. At other times, he did carpentry work for his employer. While Mercier was so employ-

ed, he was sent by his employer, Holmes, over to defendant Jackson's place of business with orders to help him. Jackson was remodelling his garage. Mercier did as he was told, reported at Jackson's and he had been there about a week when he was injured while using an electric saw in connection with the remodelling job. Mercier at all times had continued on Holmes' payroll. Jackson and Holmes had their own private arrangment for re-imbursement, by an annual balancing of accounts. Mercier never saw Jackson during the week he was at his place and had no communication with him about the job. He testified, without objection, that he considered aud believed that he was working for Shirley Holmes at the time of this injury. He also believed that he continued to be protected by Holmes' workmen's compensation insurance. Holmes, hinself, testified that he believed Mercier was his employee at the time he was hurt. In fact, he filed a notice of the claimant's injury with the Commission in which he identified himself as Mercier's employer. At the time Holmes loaned Mercier to Jackson, he did so with the understanding that he could recall him at any time. On this basis it was advantageous to Holmes to be able to put a man out on work temporarily, during slack times.

We come now to the appellant's first exception. He claims that it was error to admit testimony concerning "'swapping' work or exchanging labor." During the course of the trial Shirley Holmes had taken the witness stand. After direct examination, he first came under cross examination by the attorney for defendant Jackson. As a part of it, questions were asked by him concerning the "swapping-work" or "exchanging-labor" arrangements which Jackson and Holmes had, to some extent, employed. The appellant objected to such testimony on the ground "that there has been no exchange." The objection being overruled, evidence was received to the effect that there were times when both Jackson and Holmes had too much help and times when they didn't have enough and that they had to exchange labor if they were to keep their employees occupied. Each continued to pay his own help while they were loaned out, and at the end of the

year resulting balances were adjusted. This whole line of testimony was admitted subject to the appellant's exception.

The appellant claims that this evidence which came in under objection during cross examination was "immaterial, and prejudicial to defendant Holmes." The exception to the admission of this line of testimony is without merit. The testimony was clearly material, not for the special reasons existing in *Hall* v. *Crystal Lake Ice Co.*, 109 Vt 416, 199 A 252,- for that case concerned policy terms and coverage that are not involved here, - but because it helped to bring out the relation and situation of the parties, matters which were pertinent to the question for determination: by whom was Mr. Mercier employed.

The appellant makes the claim that it was error to admit testimony concerning whether or not the plaintiff Robert Mercier agreed or consented to being an employee of Elmont Jackson. This evidence was offered by the plaintiff for the purpose of showing that he never consented or agreed to any change in his employment. It was admitted over the appellant's objection that whether or not he consented was immaterial and irrelevant. It is the appellant's contention that, under our workmen's compensation law, consent is not necessary to employment. He quotes V. S. 47, §8054 (11) as amended by No. 125 of the Public Acts of 1953 as follows:

'Workmen' and 'employee' means a person who has entered into the employment of, or works under contract of service or apprenticeship with, an employer * * *". The appellant points to the words "has entered into the employment of" and says that "Robert Mercier entered into the employment of Elmont Jackson when he reported on Elmont Jackson's job every morning for a week." This he apparently contends to be the case even though Mercier may have reported at Jackson's because he was ordered to by Holmes, his employer at the time, and in spite of the fact that Mercier never talked to Jackson or entered into any actual contract of employment with him. It should be obvious that it makes a difference how, - and under what circumstances, - a person happens to be reporting. To say that a person has entered the employment of another merely because he reports

at a certain place or job seems to be an over-simplification of the matter to say the least.

■ At the outset let us observe that, in view of the other evidence in the case, permitting the plaintiff to testify that he never agreed or consented to being an employee of Jackson- was virtually cumulative in nature and would have been without prejudice to the appellant, even if immaterial. We say *virtually cumulative* because the testimony was that both Mercier and Holmes believed that Mercier was working for Holmes at the time Mercier was hurt. It is hard to see how they both could have had this belief if Mercier had consented and agreed to the contrary. Such a belief comes close to pre- cluding the possibility of consent. Ordinarily, in order to consent one must be confronted with a proposition or sit- uation calling for consent. There can be no consent where there is no apparent choice and no awareness from the cir- cumstances or otherwise that consent or refusal is called for.

But the testimony as to consent was not immaterial. It was of critical importance. As was said in *Sargentelli's Case*, 331 Mass 193, 195, 117 NE2d 827, 828, under a workmen's compensation statute not distinguishable from ours, "The willingness of the employee to work under the direction of Verson did not of itself make him its employee. He must also assent to becoming the employee of the new employer, in this case Verson."

■ It is not to be understood, of course, that the employee must *expressly* consent to a change of employer. But there can be no compensation liability in the absence of a con- tract of hire between the employee and the borrowing em- ployer, either express or implied. Larson, Workmen's Com- pensation Law, §48.00 - 48.10. So in this case it was a ques- tion, first, of whether there actually had been express con- sent by Mercier to become the employee of the new employ- er, or if that was lacking, whether such consent could fairly be implied under the circumstances. All evidence which would aid in this determination was material.

We now come to the appellants' exception to the trial court's refusal to grant their motion for a directed verdict in

their favor. This exception is briefed along with appellants' exception to the trial court's refusal to grant their motion for judgment not withstanding the verdict. The ground of the appellants' motion for a directed verdict was that viewing the evidence in the light most favorable to the plaintiff, the jury acting reasonably must find Elmont Jackson ("the special employer") was the employer of the claimant at the time of the accident.

Counsel for the appellants in arguing this exception follows the same line of thought that he did in connection with his objection to evidence tending to show that the claimant never consented or agreed to any change in his employment. The appellant fails to recognize the necessity of a contract of hire by the employee with the special employer. This comes about we think from a failure to approach this case as a compensation case as distinguished from an ordinary negligence suit brought by a third party. As is aptly observed in Larson's Workmen's Compensation Law, Vol. 1 at page 710: "For vicarious liability purposes, the spotlight was entirely on the two employers - what they agreed, how they divided control, how they shared payment, and whose work as between themselves was being done. No one paid much attention to the employee or cared whether he had consented to the transfer of his allegiance, since, after all, his rights were not usually as a practical matter involved in the suit. In compensation law, the spotlight must now be turned upon the employee, for the first question of all is: did he make a contract of hire with his special employer? If this question cannot be answered "yes", the investigation is closed, and there is no need to go on into tests of relative control and the like."

■ One has only to reflect briefly to see that an employee has important rights at stake in any change of employers. So in this case the matter of employee's consent to a new employment relation was a vital question. It was for the jury to say whether under the circumstances it could be implied from the employee's acceptance of the special employer's control and direction or whether what seemed in one light to be such acceptance might not actually be only

a continued obedience of the general employer's commands. *Rhinelander Paper Co.* v. *Ind. Comm.*, 206 Wis 215, 239 NW 412; *Texas Employers' Ins. Ass'n.* v. *Harrison*, Tex. Civ. App. (1948), 207 SW2d 168; *Shamburg* v. *Shamburg*, (1950) 153 Neb 495, 45 NW2d 446.

■ In a case of this sort, then, there are three important considerations if the special employer is to become liable for workmen's compensation: first, there must be a contract of hire, express or implied, between the special employer and employee. The necessity for this is derived from the statute, itself, which we have quoted earlier. This involves an informed consent by the employee before the employment relation can be said to exist. This requirement being met, there remains the necessity of showing that the work being done is essentially that of the special employer and lastly that such special employer has the right to control the details of the work.

■ Since the evidence in this case left room for opposing inferences on the question of whether the claimant ever agreed or consented to being an employee of Jackson, the motion for a directed verdict in favor of the appellants was properly denied. *Collins* v. *Fogg*, 110 Vt 465, 469, 8 A2d 684.

For cases bearing on the necessity of a contract of hire between the employee and the borrowing employer see *Pocrnich* v. *Snyder Mining Co.*, (1951), 233 Minn 81, 45 NW2d 794; *Shamburg* v. *Shamburg* (1950), 153 Neb 495, 45 NW2d 1446; *Texas Employers' Ins. Ass'n*, v. *Neeley* (1945) Tex. Civ. App., 1945, 189 SW2d 626; *Gipson* v. *Skelly Oil Co.* (1946) 152 F2d 588; *Gonyea* v. *Duluth Ry. Co.*, (1945) 220 Minn 225, 19 NW2d 384; *Schweitzer* v. *Thompson*, (1920) 229 NY 97, 127 NE 904; *Emeck's Case* (1919), 232 Mass 596, 123 NE 86, and see Larson's Workmen's Compensation Law §48:00 et seq.

The appellants have cited *Standard Oil Co.* v. *Anderson* (1909) 212 US 215, 29 S Ct 252, 53 L Ed 480; *Papillo's Admx*. v. *Prairie*, (1933) 105 Vt 193, 164 A 537; and *Bisson* v *Winnipesaukee Air Service Inc.*, (1940), 91 NH 73, 13 A2d 821, as supporting their position. In each of these cases the court was preoccupied with the last two requirements as stated earlier in the opinion, and the question of consent was not considered, apparently

because it was not in controversy. The cases differ in other respects as well. For example, in the New Hampshire case, there was a general understanding that the special employer had first claim on the employee's time. Both the Federal case and *Papillos' Admx. v. Prairie, supra,* are not compensation cases. They are not, therefore, controlling authorities in this case.

For the reasons already stated there was no error in denying the appellant's motion for judgment notwithstanding the verdict.

At the conclusion of the Court's instructions to the jury, the appellant had first opportunity to put on record any exceptions he might have to them. Counsel for the appellant proceeded to make the following statement:

> "I would like to make a request rather than an exception. From my listening to your charge, your Honor, you spoke of "control", in a number of instances and you used the word to indicate several things and only once did you define it, I think you used the word "control" to describe the power of Holmes to recall this man and the power of Jackson to control the work. Only once did you say what you meant. I wonder if you would be willing to explain what you meant?"

(6,7) The court gave no indication that it proposed to comply with the "request" coming belatedly as it did. When counsel for the appellant saw this before coming away from the bench, he "objected to the failure of the court to adequately define the meaning of the words "power to control" .* * *. The oral request for an instruction at the conclusion of the trial court's charge was properly refused since it was not in writing as required by rule (County Court Rule 30), and was out of time. *Bowler* v. *Miorando,* 112 Vt. 363, 24 A2d 351. The fact that the appellant "objected" to the court's failure to comply with the request and took an exception in connection therewith, added nothing to his position and left him no better off by reason thereof. Nor can the appellants claim that the court failed to cover an essential element in its charge; the "request" itself makes it clear to the contrary. Although the trial court

is bound, without request, to charge upon all essential elements, it is not bound to make every conceivable comment on the evidence and the weight of it. *French* v. *Nelson*, 111 Vt 386, 393, 17 A2d 323. See also *Gero* v. *John Hancock Ins. Co.* 111 Vt 462, 475, 18 A2d 154. In elaborating on this exception counsel for the appellants complains in his brief: "Nowhere in the charge does the court give the jury a concrete test to go by in their determination, such as; if you find that the work being performéd was Jackson's and that Jackson had the power to control Robert Mercier in the performance of his work at the time of injury, you will find for Shirley Holmes, or stated conversely that they should find for Jackson." In the light of what has already been said in this opinion, a binding charge to this effect would not have been a correct statement of the law as applied to the situation disclosed in this case. It left out an important element: the necessity of a contract of hire between the employee and the borrowing employer. There was no error in connection with this exception.

 The final division of the appellant's brief is entitled: "The defendant, Shirley Holmes and his insurance carrier, should not be made responsible for Mercier's injuries because they arose from work out of which Shirley Holmes received no gain and which involved risks for which he was not responsible." The brief fails to point to any exception where this question was raised below. This being so there is nothing for our consideration in that regard. *Wool* v. *Larner*, 112 Vt 431, 437, 26 A2d 93; *Campbell* v. *Campbell*, 104 Vt 468, 474, 162 A 379, 85 ALR 626. A more substantial reason why the appellants are not entitled to be heard on this last assignment of error, is that it is concerned with a matter outside the agreed scope of the case as submitted to the jury. It should be recalled that all parties consented that but one question be submitted to the jury. This question was: "By whom was Mr. Mercier employed at the time of the accident, November 1, 1954?" The case was submitted to the jury on this basis by the court below without objection by the appellants. We are bound to treat the case accordingly.

*Judgment affirmed and cause remanded.*