## Tammy Candido v. Polymers, Inc.

[687 A.2d 476]

No. 95-590

Present: **Gibson, Dooley, Morse and Johnson, JJ., and Martin, Supr. J., Specially Assigned**

Opinion Filed November 8, 1996

*James A. Dumont* and *Sandra M. Lee* of *Keiner & Dumont, P.C.,* Middlebury, for Plaintiff-Appellant.

*Susan J. Flynn* and *Karen McAndrew* of *Dinse, Erdmann, Knapp & McAndrew, P.C.,* Burlington, for Defendant-Appellee.

**Gibson, J.** Plaintiff Tammy Candido appeals from an order of the Addison Superior Court granting summary judgment in favor of defendant Polymers, Inc. on Candido's negligence claims. Candido contends that the court erred in finding her, a worker hired through a temporary employment agency, Polymers's borrowed servant, and that her common-law claims are therefore barred under the employer-immunity provision of the Workers' Compensation Act, 21 V.S.A. § 622. We affirm, but on the basis that Polymers qualifies as Candido's "employer" and Candido qualifies as Polymers's "employee" under the statutory language.

Polymers is a manufacturer of commercial brush fibers. In March 1992, Candido inquired about employment opportunities at Polymers's factory in Middlebury and was told to submit an application to TAD Technical Services Corp. (TAD), an employment agency that had a contract with Polymers to provide temporary workers. Candido submitted an application to TAD, which hired her and assigned her to work at Polymers's Middlebury plant.

The contract between Polymers and TAD provided that TAD would "[a]ct as 'The Employer' for hiring and employing temporary workers," but that Polymers reserved the right to disapprove applicants recommended by TAD. Under the contract, TAD established the pay rate of temporary workers and completed "all wage and hour documents as the temporary workers will be on [TAD's] payroll." TAD also provided temporary workers with hazard communication training using Polymers's "Hazard Communication Program." Polymers's role under the contract was to "[p]rovide TAD with a pool of recommended applicants and notify them of temporary employment needs." Polymers established work schedules, provided job and safety training, supervised the temporary workers, and could request replacement of an unsatisfactory worker.

According to the deposition testimony of Martin Thompson, who signed the contract on behalf of Polymers, Polymers did not pay workers' compensation insurance premiums for temporary workers, but instead required during contract negotiations that TAD provide liability coverage and workers' compensation coverage for temporary workers. Thompson further stated his belief that the "upcharge" that Polymers paid to TAD included the cost of workers' compensation coverage provided by TAD to temporary workers.

On April 25, 1993, while working at Polymers's plant, Candido cut her knee and suffered temporary total loss and permanent partial loss of use of her leg. Candido sought and obtained workers' compensation benefits from TAD and then commenced a tort action in superior court against Polymers and the supervisor who had overseen her training and work.

Polymers moved for summary judgment, arguing that, as Candido's employer under both the statutory definition of "employer" in Vermont's Workers' Compensation Act, 21 V.S.A. § 601(3), and the "borrowed servant" doctrine, it was entitled to the employer-immunity provisions of 21 V.S.A. § 622. The superior court found that Candido was Polymers's "borrowed servant" and granted summary judgment in favor of Polymers.

We review a grant of summary judgment using the same standard as the superior court. *Madden v. Omega Optical, Inc.*, 165 Vt. 306, 309, 683 A.2d 386, 389 (1996). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." V.R.C.P. 56(c)(3). In determining

whether a genuine issue of material fact exists, we take as true the facts as alleged by the nonmoving party, *Andrew v. State*, 165 Vt. 252, 253, 682 A.2d 1387, 1388 (1996), and give the nonmoving party the benefit of all reasonable doubts and inferences. *Wilcox v. Village of Manchester Zoning Bd. of Adjustment*, 159 Vt. 193, 196, 616 A.2d 1137, 1138 (1992).

The parties dispute whether Polymers was Candido's employer for workers' compensation purposes. We agree with the superior court that summary judgment for Polymers was appropriate in this case, but employ different reasoning. See *Ross v. Times Mirror, Inc.*, 164 Vt. 13, 19, 665 A.2d 580, 583 (1995) (Supreme Court not bound by reasoning used by trial court to grant summary judgment). The superior court determined that Candido was Polymers's "borrowed servant" and was thus barred from seeking recovery in tort. We conclude that Polymers is immune from tort liability because it falls within the statutory definition of "employer," and that Candido was Polymers's "employee" under Vermont's Workers' Compensation Act, 21 V.S.A. § 601(3), (14).

In interpreting statutes, our goal is to effect the intent of the Legislature, which we attempt to discern by looking to the language of the statute, along with its purpose, effects, and consequences. *Estate of Frant v. Haystack Group, Inc.*, 162 Vt. 11, 14, 641 A.2d 765, 767 (1994). The Act defines "employer" to include:

> the owner or lessee of premises or other person who is virtually the proprietor or operator of the business there carried on, but who, by reason of there being an independent contractor or for any other reason, *is not the direct employer of the workers there employed.*

21 V.S.A. § 601(3) (emphasis added). This language specifically and unambiguously covers multiple-employer business situations: where "for any . . . reason" an employee working for a business has an indirect, as well as a direct, employer. See *King v. Lowell*, 160 Vt. 614, 614, 648 A.2d 822, 823 (1993) (mem.) (general contractor and subcontractor both primarily liable for workers' compensation payments to worker directly employed by subcontractor); *Morrisseau v. Legac*, 123 Vt. 70, 78, 181 A.2d 53, 59 (1962) (same). Under the statutory language, "employer" includes the exact relationship that existed between Candido and Polymers. Polymers owns the premises and carries on the business where Candido worked. Polymers's management supervised Candido's work and had the power to replace her if

her work proved unsatisfactory. But because of the contract between Polymers and TAD, Candido received her pay and benefits through TAD, not Polymers. Thus, although TAD was Candido's direct employer, Polymers also qualifies as her employer under the statute.

Polymers's role as a statutory employer is supported by the purpose for which workers' compensation acts were originally enacted. The exclusive remedy of workers' compensation payments is part of the quid pro quo in which the sacrifices and gains of employers and employees are balanced. 2A A. Larson, Workmen's Compensation Law § 65.11, at 12-1, 12-12 (1996). An injured employee is provided "expeditious and certain payments" without having to prove fault. *St. Paul Fire & Marine Ins. Co. v. Surdam*, 156 Vt. 585, 589-90, 595 A.2d 264, 266 (1991). In return, the worker gives up the right to sue the employer. *Libercent v. Aldrich*, 149 Vt. 76, 80, 539 A.2d 981, 983 (1987). Allowing an employee with more than one employer to collect workers' compensation benefits from the first employer and then turn around and sue the second in negligence frustrates this policy. Candido seeks to live in the best of both worlds: having collected benefits for her injuries from TAD without having to show employer fault, she now seeks the right to pursue a separate, potentially larger jury award from her second employer. If allowed, employers such as Polymers would be subject to double liability — ultimate responsibility for paying benefits under the Act through the second employer, while remaining exposed to the threat of common-law negligence suits. See *Ryan v. New Bedford Cordage Co.*, 421 F. Supp. 794, 799-800 (D. Vt. 1976) (employees allowed to sue general contractor although general contractor could have been responsible for workers' compensation payments if subcontractor had not already paid). We will not interpret the statute in a manner that undermines the balance between expeditious, automatic payments to employees in return for limited liability for employers.

Having found that Polymers qualifies as Candido's employer under the statute, Polymers is immune from Candido's attempted common-law negligence suit under the Act's employer-immunity provision. 21 V.S.A. § 622. Because Candido collected workers' compensation benefits from her direct employer, TAD, we do not reach the limits to which multiple employers may contract among themselves to limit liability. But contrary to Candido's implication, an employer cannot completely avoid liability. Unlike other states' workers' compensation acts, Vermont's statute is mandatory. Once an employer-employee relationship is found, "[a]n employer shall not be relieved in whole or

in part from liability created by the provisions of [the Act] by any contract, rule, . . . or device whatsoever." 21 V.S.A. § 625; see *Falconer v. Cameron*, 151 Vt. 530, 533, 561 A.2d 1357, 1359 (1989) (employer trucking company could not avoid liability under the Act by executing "lease agreement" with driver and characterizing driver as independent contractor).

Candido contends, however, that there is a genuine issue of material fact as to whether Polymers falls within the statutory definition of "employer" based on the "borrowed servant" doctrine, which requires that an employer be found a "special employer" before liability is limited. See 1B Larson, *supra*, § 48.12, at 8-440 (employee loses right to sue special employer for negligence). She asserts that the evidence fails to demonstrate there was a contract of hire between Candido and Polymers sufficient to make Polymers her "borrowing" or "special" employer. We find decisions from other states using the borrowed-servant doctrine to distinguish general and special employers to be of limited value to our disposition.

Vermont's Workers' Compensation Act, unlike the workers' compensation acts in most of the states whose decisions have been offered for our guidance, defines "employer" in terms that bring Polymers plainly within its scope. Compare 21 V.S.A. § 601(3) and Ill. Comp. Stat. Ann. ch. 820, § 305/1(a)(2) (Smith-Hurd 1993) (defining "employer" as anyone "who has any person in service or under any contract for hire, express or implied, oral or written") with Ala. Code § 25-5-1(4) (1992) (defining "Employer" as "[e]very person who employs another to perform a service for hire and *pays wages directly to the person*") (emphasis added) and N.H. Rev. Stat. Ann. § 281-A:2, VIII(a) (Supp. 1995) (defining private "Employer" as anyone "who employs one or more persons").

Those states whose statutes do not unambiguously address the multiple-employer situation have required more extensive analysis of who qualifies as an employer. Thus, the Alabama Supreme Court, when asked to determine whether a temporary employer was entitled to tort immunity, determined first that the workers' compensation act "'does not strictly cover the loaned or dual employee.'" *Pettaway v. Mobile Paint Mfg. Co.*, 467 So. 2d 228, 229 (Ala. 1985) (quoting *Craig v. Decatur Petroleum Haulers, Inc.*, 340 So. 2d 1127, 1130 (Ala. Civ. App. 1976). The court then used the "special employer" doctrine to judicially expand the workers' compensation statute. *Id.* at 229-30. Under similar circumstances, the New Hampshire Supreme Court determined first that the question "is [not] answered by the workers'

compensation statute." *LaVallie v. Simplex Wire & Cable Co.*, 609 A.2d 1216, 1217 (N.H. 1992). The court then applied the "borrowed-servant rule" to find an employer-employee relationship subject to common-law immunity. *Id.* at 1218-19.

By contrast, the Appellate Court of Illinois, which, like Vermont, has a more comprehensive definition of "employer," held that "[w]hether characterized as a borrowing or joint employer, we are convinced that defendant was within the general definition of an employer under the Workmen's Compensation Act" when asked to apply employer immunity in a temporary employment context. *Freeman v. Augustine's Inc.*, 360 N.E.2d 1245, 1247 (Ill. App. Ct. 1977). In the end, whether decided under the borrowed-servant doctrine or through statutory language, the majority of cases have held that a worker becomes the employee of the special employer where the general employer is in the business of furnishing workers. 1B Larson, *supra*, § 48.12, at 8-515, 8-524, 8-528, 8-532; see 21 V.S.A. § 709 (statute shall be interpreted "to effect its general purpose to make uniform the law of those states which enact it").

Because we find that Polymers was Candido's employer under the statute and therefore immune from common-law liability under § 622, Candido's argument that Polymers is subject to liability as a third party under § 624 is without merit. Section 624 specifically allows an employee to pursue additional remedies only against a "person *other than* the employer." 21 V.S.A. § 624(a) (emphasis added).

Having found that Polymers qualifies as Candido's statutory employer, we also find that Candido qualifies as Polymers's "employee" under the statute. Under Vermont's statute, an employee is any "person who has entered into the employment of, or works under contract of service . . . with, an employer." *Id.* § 601(14). Before a temporary employee can be said to have "entered into the employment of" the employer, there must be a contract for hire, express or implied, between the employer and employee.* *Mercier v. Holmes*, 119 Vt. 368, 372, 375, 125 A.2d 790, 793, 795 (1956). In turn, for there to be a contract for hire, there must be informed consent by the

---

*When determining whether an employer-employee relationship exists under the borrowed-servant doctrine, analysis of two additional steps is required. The party must show that the work being done was essentially that of the special employer and that the special employer had the right to control the details of the work. *Mercier v. Holmes*, 119 Vt. 368, 375, 125 A.2d 790, 795 (1956); 1B Larson, *supra*, § 48.00, at 8-434. Because we resolve this case through the statutory language, we do not address these factors.

employee to the employment relationship. *Id.* at 373, 375, 125 A.2d at 794, 795. The most important consideration in finding implied consent is whether the employee submitted to the employer's direction and control. See *id.* at 374-75, 125 A.2d at 794; *Whitehead v. Safway Steel Prods., Inc.*, 497 A.2d 803, 812 (Md. 1985); *Antheunisse v. Tiffany & Co.*, 551 A.2d 1006, 1008 (N.J. Super. Ct. App. Div. 1988).

There is no question that there was no direct contract of service between Candido and Polymers. But we do find that Candido "entered into the employment of" Polymers. Candido clearly accepted Polymers's direction and control. She originally applied for employment directly with Polymers, and applied with TAD only after being told that TAD was on contract with Polymers to provide workers. Polymers established work schedules and provided job and safety training. Most importantly, Polymers directly supervised TAD workers alongside workers hired directly by Polymers. Polymers's supervisors confirmed the hours worked by TAD employees and requested replacement of problem workers, if necessary.

Having found that Polymers falls within the statutory definition of employer and that Candido qualifies as Polymers's statutory employee, we do not see that there exists a genuine issue of material fact precluding entry of summary judgment in Polymers's favor.

*Affirmed.*