**Norman and Bobbie Jo WELCH v.
HOME TWO, INC.**

[783 A.2d 419]

No. 00-236

September 19, 2001. Norman and Bobbie Jo Welch appeal from an order of the Chittenden Superior Court dismissing their negligence claim against defendant, Home Two, Inc. Plaintiffs contend that the court erred in finding that Home Two, Inc. was Norman Welch's statutory employer within the meaning of the Workers' Compensation Act, 21 V.S.A. §§ 622, 624 (the Act), and that plaintiffs' common law claims are therefore barred under the employer-immunity of the Act. We affirm.

In January 1998, Norman Welch worked as a project supervisor for Leclair Brothers Inc., an electrical subcontractor, at a construction project at the Charlotte Library. Home Two, Inc. was the general contractor of the Charlotte Library construction project. On January 21, while working at the construction site, Welch injured his shoulder, attempting to ascend a staircase which he claims was negligently selected and installed by Home Two. Due to the accident, Welch was disabled from work for one year, underwent surgery on his shoulder and sustained a permanent partial impairment. As a result of his injury, Welch received workers' compensation benefits through Leclair Brothers' coverage.

No written employment contracts were executed between Home Two and either Leclair Brothers or Welch. However, Home Two regularly contracted with independent electrical subcontractors, such as Leclair Brothers, to perform work on its construction projects.

After his injury, Welch[1] brought a negligence action against Home Two, claiming that it negligently installed a staircase at the construction site, and knowingly created "an unreasonable risk of danger." Home Two filed a motion to dismiss pursuant to V.R.C.P. 12(b)(6), arguing that as Welch's statutory employer under the Act, 21 V.S.A. §§ 622, 624, it was entitled to immunity from suit by an injured employee of an independent subcontractor. Welch opposed the motion, filing a statement of material facts and an affidavit.[2] The superior court granted

_____

[1] Bobby Jo Welch claimed loss of spousal consortium as a result of her husband's injuries. Reference to "Welch" is to plaintiff Norman Welch.

[2] In its response to defendant's Rule 12(b)(6) motion, plaintiffs requested that it be treated as one for summary judgment. The rule provides:

> If, on a motion asserting the *defense* . . . to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the · motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

V.R.C.P. 12(b) (emphasis added).

The court was under no obligation to convert the motion to dismiss to a motion for summary judgment since it was plaintiffs not defendant who filed an affidavit and statement of facts in opposition to the motion to dismiss.

In any event, for the purposes of this case, we have considered plaintiffs' supplemental affidavit and statement of material facts to be within the ambit of

Home Two's motion to dismiss in a one sentence opinion which states, "General contractor having control of premises is statutory employer."

. On appeal, Welch claims the court erred in concluding that Home Two was Welch's employer. We disagree. The rights and remedies of Vermont's Workers' Compensation Act granted to an employee on account of a personal injury for which the employee is entitled to compensation under the provisions of the Act are intended to be exclusive, "[e]xcept as provided in subsection 618(b) and section 624 of [Title 21]." 21 V.S.A. § 622. Here, Welch, having elected to claim workers' compensation (see § 618(b)), asserts that his acceptance of compensation benefits should not be deemed to be an election of remedies because Home Two is not Welch's employer within the meaning of 21 V.S.A. § 624(a).[3] Welch asserts that Home Two

---

the pleadings. In reviewing a motion to dismiss, we assume that all factual allegations in the complaint are true, accept as true all reasonable inferences that may be derived from plaintiffs' pleadings and assume that all contravening assertions in defendant's pleadings are false. *Richards v. Town of Norwich*, 169 Vt. 44, 726 A.2d 81 (1999).

[3] Section 624(a) of the Workers' Compensation Act states in pertinent part:

> Where the injury for which compensation is payable under the provisions of this chapter was caused under circumstances creating a legal liability to pay the resulting damages in some person *other than the employer*, the acceptance of compensation benefits or the commencement of proceedings to enforce compensation payments shall not act as an election of remedies, but the injured employee or the employ-

cannot be considered an employer within the ambit of § 624(a) because (1) Home Two did not control the worksite premises, and (2) because Welch received workers' compensation benefits from subcontractor, Leclair Brothers, and not Home Two, the general contractor.

In essence, Welch attempts to preserve the option of collecting workers' compensation benefits from the subcontractor *and* suing the general contractor for negligence by application of a statutory employer "test" that would insulate a general contractor from the definition of "employer." We have long held that in determining whether an employer-employee relationship is covered by the Workers' Compensation Act, the language of the law "is all-embracing." *Morrisseau v. Legac*, 123 Vt. 70, 76, 181 A.2d 53, 57 (1962). The Workers' Compensation Act defines "employer" to include:

> the owner or lessee of premises or other person who is virtually the proprietor or operator of the business there carried on, but who, by reason of there being an independent contractor or for any other reason, is not the direct employer of the workers there employed.

21 V.S.A. § 601(3). As we have previously stated, "[t]his language specifically and unambiguously covers multiple-employer business situations." *Candido v. Polymers, Inc.*, 166 Vt. 15, 17, 687 A.2d 476, 478 (1996).

Welch notes that in *Candido* we held that in the absence of a written employment contract, "[t]he most important

---

ee's personal representative may also proceed to enforce the liability of such third party for damages in accordance with the provisions of this section.

21 V.S.A. § 624(a) (emphasis added).

consideration in finding implied consent [by the employee to the employment relationship] is whether the employee submitted to the employer's direction and control." *Id.* at 21, 687 A.2d at 480. The employment relationship in *Candido* differs markedly, however, from the one at issue in the present case. In *Candido*, the defendant, Polymers, Inc., had a contract with an employment agency which provided temporary workers. The plaintiff, one such temporary employee, was injured on the job while working at the defendant's plant, and received workers' compensation benefits from the employment agency.

As in the instant case, the plaintiff in *Candido* argued that the defendant was not plaintiff's employer within the meaning of the Workers' Compensation Act and thus was subject to common law liability. *Id.* at 20, 687 A.2d at 480. In determining whether the plaintiff consented to the employment relationship with the defendant, we found that the plaintiff clearly accepted the defendant's direction and control. But the inquiry that was necessary in *Candido*, i.e., to ensure that in a "lent-employee" situation the employee's common law rights were not being affected by the private arrangement between two employers without the employee's consent, is different from the relevant inquiry where a statutory employment relationship exists. See 6 A. Larson & L. Larson, Larson's Workers' Compensation Law § 111.04[1][c], at 111-30 (2001) (where "state has, for various policy reasons, decreed by statute that certain legal liabilities and relations shall follow if parties fit into a particular employment pattern," different branches of law, that of statutory employees and that of lent employees, should not be confused).

Within the general contractor construction context, the facts of the instant case fall within an employment pattern well known to, and recognized by, the Legislature. General contractors typically "outsource" specific responsibilities within the overall construction project to subcontractors. To require general contractors to demonstrate direct control and supervision of workers hired directly by subcontractors would contravene the nearly universal approach of Workers' Compensation Acts intended to make the general contractor the employer for purposes of extending coverage. See *id.* at § 111.04[1][a], at 111-21 ("Since the general contractor is . . . in effect, made the employer for the purposes of the compensation statute, it is obvious that it should enjoy the regular immunity of an employer from third-party suit when the facts are such that it could be made liable for compensation; and the great majority of cases have so held.").

Similarly, Welch's assertion that the general contractor cannot be said, as a matter of law, to be "virtually the proprietor or operator of the business there carried on [the·premises]" would effectively remove general contractors from the statutory definition of employer unless they were the owners or lessees of the premises. See 21 V.S.A. § 601(3). It would be difficult, to say the least, to give effect to the clear legislative intent to make general contractors "employers" for purposes of broadening workers' compensation coverage, if general contractors cannot be said to be operators of the general contracting business on the premises where the construction project takes place. Welch's injury occurred at the construction site at the Charlotte Library, where, as general contractor, Home Two was "virtually the proprietor or operator of the business [the construction project] there carried on." *Id.*

Finally, Welch contends that Home Two does not qualify for immunity from suit because it did not in fact pay workers' compensation to him. Citing *Ryan v. New Bedford Cordage Co.*, 421 F. Supp. 794 (D. Vt. 1976), Welch asserts that a general contractor that could be held liable for workers' compensation

benefits in the event that a subcontractor fails to secure workers' compensation coverage is not entitled to immunity when it does not in fact provide such benefits to the injured worker. However, our decision in *Candido* effectively rejects the holding in *Ryan* by determining that an employee is not entitled to both workers' compensation benefits and recovery under a common law negligence action. See *Candido*, 166 Vt. at 20, 687 A.2d at 480. This reading comports with our previous decisions that hold both employers "primarily liable." *Morrisseau*, 123 Vt. at 78, 181 A.2d at 59; *King v. Snide*, 144 Vt. 395, 401, 479 A.2d 752, 754 (1984). "[I]t is the fact of liability that renders [an employer] immune from suit . . . not the fact that its carrier did not actually pay [an injured employee's] worker's compensation benefits." *Walker v. United Steel Works, Inc.*, 606 So. 2d 1243, 1244 (Fla. Dist. Ct. App. 1992).

The Court's interpretation of the Act is consistent with its legislative purpose: to provide "expeditious and certain payments" to injured employees without requiring them to prove fault. *St. Paul Fire & Marine Ins. Co. v. Surdam*, 156 Vt. 585, 589, 595 A.2d 264, 266 (1991). "Allowing an employee with more than one employer to collect workers' compensation benefits from the first employer and then turn around and sue the second in negligence frustrates this policy." *Candido*, 166 Vt. at 18, 687 A.2d at 478.

We find that as a general contractor Home Two was Welch's statutory employer, entitling it to immunity under the Workers' Compensation Act.

*Affirmed.*

**Skoglund, J.,** concurring. I concur in all aspects of the decision but disagree with this Court's suggestion that only a defendant/movant could convert a Rule 12(b) motion to dismiss into a motion for summary judgment. See 172 Vt. at 632 n.2, 783 A.2d at 420 n.2. Under Rule 12 of the Federal Rules of Civil Procedure, either the pleader, the moving party, or both, may bring the conversion provision into operation by submitting matters extraneous to the complaint. See *Santiago v. Canon U.S.A., Inc.*, 138 F.3d 1, 4 (1st Cir. 1998); *Bapat v. Connecticut Dep't of Health Servs.*, 815 F. Supp. 525, 529 (D. Conn. 1992); 5A C. Wright & A. Miller, Federal Practice and Procedure § 1366 (2d ed. 1990).

We have not had occasion to specifically address this issue under our state rules of civil procedure. It may not be typical that the pleader would initiate such conversion to summary judgment, as that may result in a binding final determination against him rather than a test of the law of the case, but I believe it remains a possibility under V.R.C.P. 12(b). In the case at bar, the trial court obviously did not convert the motion to dismiss to one of summary judgment as evidenced by that court's entry order. Further support for this conclusion is found in the fact that the court did not notify the parties that it was considering conversion from a motion to dismiss to one of summary judgment and, thus, provide them the opportunity to supplement their submissions as required by the rule. See V.R.C.P. 12(b). I am authorized to say that Justice Johnson joins in this concurrence.